420 A.2d 570

**Carol Henrietta TAYLOR (nee Hingst)**

v.

**William John Russell TAYLOR a/k/a Dr. Russell Taylor.**

**Appeal of William John Russell TAYLOR.**

Superior Court of Pennsylvania.

Submitted March 21, 1980.

Filed May 30, 1980.

W. J. Russell Taylor, in pro. per.

Andrew Napoli, Philadelphia, for appellee.

Before WICKERSHAM, HESTER and LIPEZ, JJ.

WICKERSHAM, Judge:

The appellant, William John Russell Taylor, seeks custody of his daughter Ann Mary, age 7, born 29 May 1972 and his son Michael, age 12, born 6 March 1968.

Dr. Taylor and his former wife Carol, the natural mother, were married in Canada in 1963, and both are Canadian citizens. The two children in question were born in the United States.

In 1975 Carol Taylor commenced a divorce and custody proceeding in the Supreme Court of Ontario and the appellant, who lived in Toronto, Canada at the time, *was personally served*, appeared and defended the action.

A temporary custody order in favor of Carol was entered in August 1975. Thereafter, much confusion prevailed while the father and mother physically moved the children back and forth between Canada and the United States.

In March 1977, the Supreme Court of Canada entered a further and final decree awarding custody to the mother. Since the mother did not have de facto custody in March 1977, she was required to enter Pennsylvania to begin an action to enforce the Canadian Decree.

On September 8, 1977, following proceedings in Delaware County and Philadelphia County, Judge Robert F. Kelly of the Court of Common Pleas of Delaware County found the Ontario Court Decree entitled to recognition and enforcement pursuant to the Uniform Child Custody Jurisdiction Act, Act of June 30, 1977, P.L. 29, No. 20, § 1, 11 P.S. § 2301 et seq., and ordered the children returned to the mother. The Superior Court of Pennsylvania affirmed on April 13, 1978 and allocatur was denied by the Pennsylvania Supreme Court June 22, 1978. Attempted federal jurisdiction was denied. On July 14, 1978 the children were returned to the mother.

On August 9, 1978 the father filed his own petition in Philadelphia County seeking custody of Ann Mary and Michael. The lower court dismissed and this appeal followed. Appellant had contended in the lower court that changed circumstances had occurred during the year that followed the entry of Judge Kelly's order.

In *Commonwealth of Pennsylvania v. Thomas A. Zaubi, et al.*, 275 Pa.Super. 294, 418 A.2d 729 (1980). We said:

"We feel that the UCCJA compels that Pennsylvania courts not only recognize proper custody decrees from foreign nations, as the lower court admits, but also that they decline to accept jurisdiction to modify custody decrees in the absence of the showing of conditions in the custodial household that are physically or emotionally harmful to the children. Where, as here, the only changed condition is that the children have been abducted from the jurisdiction issuing a valid custody decree, the UCCJA clearly intends that our courts enforce the foreign decree."

\* \* \* \* \* \*

"When a Pennsylvania court is asked to modify the custody decree of a foreign court it must be governed by the provisions of the Act. The purpose of the Act is to provide stability to the home environment and to family relationships by discouraging continuing controversy over child custody and visitation; to avoid jurisdictional disputes; to deter abductions; to avoid relitigation insofar as

feasible; to promote comity and to assure that litigation concerning child custody takes place ordinarily in the state in which the child and his family have the closest connection. This places a rather heavy burden on any parent who abducts his child and goes forum shopping to prove that the court issuing the original decree was not acting in the child's best interest."

The UCCJA, § 2308(a) provides:

"A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

\*  \*  \*  \*  \*  \*

If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum it may dismiss the proceedings, . . . ."

Finally, § 2324, entitled International application:

"The general policies of this act extend to the international area. The provisions of this act relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons."

The lower court dismissed the petition of appellant and thereby declined to exercise its jurisdiction, finding that the Court of Ontario where the mother and children now live was a more appropriate forum.

We agree and affirm the action of the lower court in finding itself to be an inconvenient forum and holding that the Court of Ontario had jurisdiction and that its custody decree should be held to have binding force and res judicata effect.

Affirmed.