443 A.2d 307

**COMMONWEALTH ex rel. EARL R. D.**

v.

**LINDA H. S.**

**Appeal of EARL R. D.**

Superior Court of Pennsylvania.

Argued March 11, 1980.

Filed March 5, 1982.

Richard Orloski, Allentown, for appellant.

Thomas J. Turczyn, Allentown, for appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

BROSKY, Justice:

Appellant, Earl D., instituted a habeas corpus action against appellee, Linda S., in the Court of Common Pleas of Lehigh County, Pennsylvania, seeking to obtain custody of a child whom he claimed to be his son, Zachary O. S. Personal service was made on Linda S., then a Pennsylvania resident, on August 28, 1978. Counsel for Linda S. filed an appearance on September 1, 1978. On August 6, 1979, Linda S. filed a petition to dismiss the action asserting that the court lacked jurisdiction. A hearing was held on September 10th through 12th, 1979 at which the court held that it did not have jurisdiction over the case and therefore granted the petition to dismiss. This appeal followed. We remand to the trial court for reasons stated herein.

On May 13, 1977, Linda S. gave birth to Zachary S. at the Chapel Hill Memorial Hospital in Chapel Hill, North Carolina. Linda S. was not married at the time she gave birth. For some time prior to the birth of Zachary S., Linda S. and Earl D. had lived together in Pittsboro, North Carolina. Shortly after Zachary S.' birth, Linda S. moved with her child from North Carolina to Route 1, Wescosville, Lehigh County, Pennsylvania. They resided in Pennsylvania from June, 1978 to March, 1979. During this time, the habeas corpus petition was served on Linda S. On March 27, 1979, Linda S. married Peter R. in Vermont. She and her son resided in Vermont up until the time of argument of this appeal. Linda S. was a registered nurse employed in Vermont up until the time this appeal was argued.

On September 1, 1978, Linda S. filed an answer to Earl D.'s petition for habeas corpus in which she admitted that she had cohabitated with Earl D., but denied that Earl D. was the father of Zachary S. On September 19, 1978, Earl D. filed interrogatories upon Linda S. seeking to determine

the date of the child's birth, the duration of time of the admitted cohabitation, and the identity of the putative father of the child. Linda S. filed timely objections to the interrogatories which were subsequently resolved by the parties who agree to submit themselves, the putative father, Peter R., and the child, to a blood test.

The tests completed in the winter and spring of 1979, indicated that Earl D. could not be excluded as father of the child but that Peter R. was excluded from being father of the child. The motion to dismiss the action commenced by Earl D. was filed on August 6, 1979. On September 12, 1979, the trial court held that the best interests of the child would be served if the State of Vermont assumed jurisdiction in the case pursuant to the Uniform Child Custody Jurisdiction Act, 11 Pa.S.A. § 2301 et seq. (hereinafter U.C.C.J.A.).

Earl D. raises three issues on appeal which include:
1. Whether the trial court erred in holding that it had no jurisdiction over the matter under the U.C.C.J.A.?
2. Whether the trial court erred in holding that the action was filed in an inconvenient forum and that Vermont was the convenient forum?
3. Whether the trial court erred in refusing to permit testimony from a North Carolina lawyer as to that state's custody law?

The U.C.C.J.A. provides for jurisdiction of 11 Pa.S.A. § 2304 which states:

§ 2304. Jurisdiction

(a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This State:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this State because of his removal or reten-

tion by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State;

(2) It is in the best interest of the child that a court of this State assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this state; and

(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) The child is physically present in this State, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that this court assume jurisdiction; or

(5) The child welfare agencies of the counties wherein the contestant for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

(b) Except under subsection (a)(3) and (4), physical presence in this State of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination.

(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

Earl D. argues only that the trial court erred in its decision that jurisdiction did not exist under §§ 2304(a)(2) and (4). We agree that jurisdiction existed under § 2304(a)(4), however, we affirm on other grounds and remand to that court.

Section 2304(a)(2) permits a court to assume jurisdiction where it is in the "best interest of the child" and "the child and his parents or the child and at least one of his parents have a significant connection" with the state, § 2304(a)(2)(i), and "substantial evidence concerning the child's present or future care, protection, training, and personal relationships" is available in the state. § 2304(a)(2)(ii). Linda S. and her child resided in Pennsylvania from June 1978 until March 1979. She was served on August 28, 1978. We are unable to hold that on the date that Linda S. was served that the child and Linda S. had a significant connection with Pennsylvania. While Linda S. may have had such a connection because her family resided in Pennsylvania, her child clearly did not have such a connection with Pennsylvania. However, even if we were to hold that a significant connection existed we are unable to hold that "substantial evidence concerning the child's present or future care, protection, training, and personal relationships" was then available in Pennsylvania. Thus jurisdiction would not attach under § 2304(a)(2).

Accordingly, it is apparent, that at the time that the action was initially filed, the Pennsylvania Courts would not have had jurisdiction under § 2304(a)(4). That section requires that we determine whether another state would have had jurisdiction under § 2304(a)(1), (2) or (3). The only states which could possibly exercise jurisdiction over the dispute at that time were Pennsylvania and North Carolina. North Carolina was the home state of the child. The child resided in North Carolina for the first 13 months of his life. *Commonwealth ex rel. Octaviano v. Dombrowski*, 290 Pa.Super. 322, 434 A.2d 774 (1981). Jurisdiction also could have been found to have existed in North Carolina under § 2304(a)(2). It was in the best interest of the child for North Carolina to assume jurisdiction because the child and

at least one of his parents had substantial connection with the state of North Carolina, *Joseph E. H. v. June E. H.*, 283 Pa.Super. 109, 423 A.2d 739 (1980); *K. N. v. Cades*, 288 Pa.Super. 555, 432 A.2d 1010 (1981), clearly, because the child and his mother lived in North Carolina for 13 months preceding the action filed in North Carolina. And, furthermore, substantial evidence existed in North Carolina as to the "child's present or future care, protection, training, and personal relationships(.)" Id.

In *Haynes v. Willock*, 288 Pa.Super. 167, 170, 431 A.2d 341, 342–343 (1981), we said:

> In the instant case the permanent residence of the child's mother is in Delaware County, Pennsylvania with her mother. The child attends first grade in Delaware County, is engaged in Brownies there, is active in such activities as school plays, and has made a number of friends there which she could not do in Virginia due to the relative isolation of the appellants' home. The child never resided solely with her grandparents in Virginia but resided with her mother who was living with appellants. The purpose of the Uniform Child Custody Act is to prevent the "kidnapping" or "snatching" of children from one jurisdiction to another. In the instant case the child's mother had been residing in Virginia but had made plans to move to Pennsylvania immediately after the school year had ended. Under these circumstances we hold that sufficient contacts with Pennsylvania have been shown to confer jurisdiction of this matter on the Court of Common Pleas of Delaware County.

See, *Matter of D. L. S.*, 278 Pa.Super. 446, 420 A.2d 625 (1980). Nevertheless, we are unable to hold that North Carolina had jurisdiction over the case at the time it was filed in Pennsylvania because North Carolina had not enacted the U.C.C.J.A. at that time. North Carolina did not adopt the act until 1979.[1] Thus, we must determine whether North Carolina would have adopted jurisdiction over the case under the law as it then existed in North Carolina.

1. North Carolina did not adopt the U.C.C.J.A. until 1979, to be effective July 1, 1979. G.S. §§ 50A–1 to 50A–25.

■ The statute providing for jurisdiction in child custody disputes in North Carolina in effect at the time of the filing in the instant action is found at G.S. 50–13.5(c)(2)(a) and (b) which provided that the North Carolina courts had jurisdiction in a child custody case when (a) the child resided, had domicile or was physically present in the state or; (b) the court had personal jurisdiction of the person, agency, organization or institution having actual care, control and custody of the minor child. The child in the instant case was in the custody of his mother and did not reside in and was not domiciled in nor was he present in the state of North Carolina when the action was filed. Thus, North Carolina would not have had jurisdiction. *King v. Demo*, 40 N.C.App. 661, 253 S.E.2d 616 (1978); *Stanback v. Stanback*, 287 N.C. 448, 215 S.E.2d 30 (1975); *Spence v. Durham*, 283 N.C. 671, 198 S.E.2d 537 (1973), cert. den. 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1974). Thus, we are obliged to hold that Pennsylvania courts had jurisdiction under § 2304(a)(4) because the North Carolina courts would not have jurisdiction under North Carolina law as it then existed. This result is dictated by the purpose of the U.C.C.J.A.

In *Commonwealth ex rel. Zaubi v. Zaubi*, 275 Pa.Super. 294, 300, 418 A.2d 729, 732 (1980), our Supreme Court said:

The purpose of the Act [U.C.C.J.A.] is to provide stability to the home environment and to family relationships by continuing controversy over child custody and visitation; to avoid jurisdictional disputes; to deter abductions; to avoid relitigation insofar as feasible; to promote comity and to assure that litigation concerning child custody takes place ordinarily in the state in which the child and his family have the closest connection.

See also: *Jurisdiction—Uniform Child Custody Jurisdiction Act—1977 Pa. Laws 20 §§ 1–27*, Note, 51 Temple L.Q. 139 (1977); Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflicts of Laws*, 22 Vanderbilt L.R. 1207 (1969).

■ Having determined that the Pennsylvania courts had jurisdiction in the instant case, we must now decide whether

the trial court correctly decided that it was not a convenient forum. Section 2308 of the U.C.C.J.A. provides:

(a) A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) if another state is or recently was child's home state:

(2) if another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in section 2.

(d) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

(e) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate

forum it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

(f) The court may decline to exercise its jurisdiction under this act if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding.

(g) If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this State, necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses. Payment is to be made to the prothonotary for remittance to the proper party.

(h) Upon dismissal or stay of proceedings under this section the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.

(i) Any communication received from another state informing this State of a finding of inconvenient forum because a court of this State is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this State shall inform the original court of this fact.

This court has addressed this question on a number of previous occasions. See: *Commonwealth ex rel. Octaviano v. Dombrowski*, supra, (child moved from Pennsylvania after habeas corpus petition filed but before service made, and where child had substantial connection with Pennsylvania, Pennsylvania was a convenient forum); *Parks v. Parks*, 284 Pa.Super. 400, 426 A.2d 108 (1981), (where mother voluntarily submitted herself to Pennsylvania Court's jurisdiction and

where father resides in Pennsylvania, trial court could not decline jurisdiction); *Taylor v. Taylor,* 278 Pa.Super. 339, 420 A.2d 570 (1980), (Ontario Court was convenient forum where mother and child in her custody had moved permanently to Ontario); *In Re Sagan,* 261 Pa.Super. 384, 396 A.2d 450 (1978), (where divorce was granted in New York and mother and child in her custody lived in New York, New York was convenient forum).

We agree with the trial court where it said:

After considering the evidence and evaluating the litigants, we found, quite aside from the matter of jurisdiction, that Pennsylvania is an *inconvenient forum for many* reasons, namely, that none of the parties even contend that Pennsylvania is the present place of residence of any of the parties; that since March, 1979 Vermont has been the state of residence of both Zachary and his mother, the appellee; that in open court the appellee pronounced her consent and willingness to submit herself and the subject matter of this proceeding to the jurisdiction of the courts of Vermont; that in open court she acknowledged the appellant to be the father of the child; that Vermont is in a better position to provide the necessary supervision over and enforcement of any visitations deemed appropriate, in view of the age of the child, 2½ years, the geography of the residences as between the appellant and the appellee and the other considerations confronting a court. Upon reflection, we continue to believe those findings to be valid and persuasive.

(Lower Court Opinion pages 8 and 9.)

Additionally, at the time the trial court made its decision, Vermont was the child's home state. It had a close connection with child and his mother. § 2308(c)(1). Substantial evidence existed in Vermont concerning the child's "care, protection, training and personal relationships" § 2308(c)(3) and, most importantly, the exercise of jurisdiction by Pennsylvania would contravene one of the purpose of the act, § 2308(c)(5). Namely, to:

(3) assure that litigation concerning the custody of a child take place ordinarily in the jurisdiction with which

the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts decline the exercise of jurisdiction when the child and his family have a closer connection with another court.

11 P.S. § 2302(a)(3).

Accordingly, we affirm the decision of the trial court insofar as it decided that Pennsylvania was not a convenient forum and its holding that Vermont is a more convenient forum. 11 P.S. § 2308(e). We remand to the trial court with instructions that it shall advise the courts of Vermont that it has declined to exercise jurisdiction over the case having found Vermont a more convenient forum. 11 P.S. § 2308(h).[2]

Order affirmed. Case remanded to the trial court for proceedings consistent with this opinion.

---

**2.** Vermont has adopted the U.C.C.J.A. 15 V.S.A. § 1031 et seq. 1979 No. 136 (Adj. Sess.).