473 A.2d 602

**Kenneth ALDRIDGE**

**v.**

**Faith ALDRIDGE and Monroe County Children's Bureau.**

**Appeal of Faith ALDRIDGE.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1983.

Filed March 9, 1984.

Marshall E. Anders, Stroudsburg, for appellant.

Mark S. Love, Stroudsburg, for Kenneth Aldridge, appellee.

Richard E. Deetz, Stroudsburg, for Monroe County, appellee.

Before CAVANAUGH, BROSKY and POPOVICH, JJ.

BROSKY, Judge:

The sole issue before us in this appeal is whether the lower court erred in transferring the instant custody proceedings to the State of Kentucky. Finding the order to be consistent with the provisions of the Uniform Child Custody Jurisdiction Act,[1] (UCCJA) we affirm.

This action was commenced by the appellee, Kenneth Aldridge who is the father of the subject children, Elizabeth and Kenneth, and the former husband of appellant, Faith Aldridge. Mr. Aldridge filed a complaint seeking custody of the children in Monroe County.

The complaint alleged, and the answer admitted, that the father resides in Louisville, Kentucky. The complaint also averred that the mother resided in Monroe County, Pennsylvania, but she denied this in her answer and instead said that she resided in Toms River, New Jersey. The mother admitted that until May of 1982 the children resided with the parents in Kentucky, but averred that from May of that year until August 30, 1982 they resided with the mother.

1. 42 Pa.C.S.A. § 5341 *et seq.*

At a hearing held on April 15, 1983 it was disclosed by a case worker for the Children's Bureau of Monroe County that Elizabeth and Kenneth had been placed in foster care on August 30, 1982, at which time their mother was hospitalized in the psychiatric unit of a hospital. The case worker then testified as to what she perceived to be the best interests of the children.

The father also testified and at the conclusion of his testimony the court asked counsel to research the law concerning jurisdiction because the court was concerned that this case would be more properly resolved in Kentucky. The court concluded that the case should indeed be transferred and so ordered. The court also directed that the custody in the Children's Bureau should be terminated and that custody be given temporarily to the father, who was to return with the children to Kentucky and post a bond to ensure his compliance with the order.

Appellant contends that the court should have retained jurisdiction over the case since both parties consented to it and that its order deprived her of her due process rights and was in contravention of the terms of the Child Custody Act.

The Act, provides in relevant part at 42 Pa.C.S.A. § 5348:

(a) General rule.—*A court which has jurisdiction under this subchapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree* if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(b) Moving party.—*A finding of inconvenient forum may be made upon the court's own motion* or upon motion of a party or a guardian ad litem or other representative of the child.

(c) Factors to be considered.—In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdic-

tion. For this purpose it may take into account the following factors, among others:

(1) If another state is or recently was the home state of the child.

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

(3) If substantial evidence concerning the present or future care, protection, training, and personal relationships of the child is more readily available in another state.

(4) If the parties have agreed on another forum which is no less appropriate.

(5) If the exercise of jurisdiction by a court of this Commonwealth would contravene any of the purposes stated in section 5342 (relating to purposes and construction of sub-chapter).

(emphasis added).

In *Hattoum v. Hattoum,* 295 Pa.Super. 169, 174–75, 441 A.2d 403, 405 (1982) our court explained:

The Act has three major bases for jurisdiction: § 5344(a)(1) provides for "home" jurisdiction; § 5344(a)(2) provides for jurisdiction based on "significant contacts" among the various parties to the custody action and the locale in which the action has been brought; § 5344(a)(3) provides for "parens patriae" jurisdiction for emergency situations in which a child is abandoned, abused or dependent.

None of these bases calls for the exercise of jurisdiction by Pennsylvania. The first ground on which jurisdiction may be predicated is that the jurisdiction is the "home state" of the children at the time the proceeding is commenced. The "home state" is defined at 42 Pa.C.S. § 5343 as:

"Home state." The state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, or in an institution, for at least six consecutive months, and in the case of a

child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

■ The Aldridge children were placed in the custody of the Children's Bureau of Monroe County on August 30, 1982. Mr. Aldridge filed the custody complaint in March 28, 1983. Although it might seem that Pennsylvania was the "home state" of Elizabeth and Kenneth, we decline to exercise jurisdiction on that basis in this case since we find Pennsylvania to be an inconvenient forum.

Aside from the fact that the children's maternal grandfather apparently resides in Pennsylvania and that they stayed at his home with their mother for a short while in 1982, there are no contacts with Pennsylvania other than the unfortunate events of August, 1982 which led to the children's placement in Monroe County, by acquaintances of their mother.[2]

■ Instead the "significant contacts" test points to Kentucky as the most appropriate forum.[3]

In its opinion the court explained that the factual basis for its determination that the case should be transferred to Kentucky as follows:

(1) Prior to June of 1982, the parties were residents of Kentucky,

(2) The natural father continues to maintain his residence in the State of Kentucky,

(3) The natural mother has removed herself not only from Kentucky, but also Pennsylvania and currently is domiciled or at least [is] a resident of the State. of New Jersey, and

2. It is with these parties, or some of them, that the mother resides in New Jersey, and with whom she was apparently staying at the time of her admission to the hospital in August, 1982.

3. No one has argued that the case should have been transferred to New Jersey, the mother's current residence, and we would find no reason to do so. The children may have resided in that state for a few months in the summer of 1982 (the record is not clear on this point), but they have not lived there before that time or since.

(4) These children have no contact with Pennsylvania except by Court Order directing the Monroe County Children's Bureau to exercise custody.

Furthermore, at the hearing the lower court noted that the home studies submitted in the case were hearsay, coming as they did from New Jersey and Kentucky and that evidence will be available in Kentucky that is not available in Pennsylvania. The court observed and we agree that:

the most significant relationship would be the State of residence when the family was unified, that being Kentucky and that this is only on the doorstep of Pennsylvania because of the process of the wife removing herself from the jurisdiction of Kentucky and has since removed herself from Pennsylvania.

We would add that the record indicates that the father has lived in Kentucky since 1981 and that he lives in a house which he owns. Although the complaint indicates that in 1980 the father, mother and children lived in Indiana, they apparently lived in Kentucky previous to that time, as the father indicated that the family resided in Kentucky when the children were born.

■ Exercise of jurisdiction by Pennsylvania would, we believe, contravene one of the purposes of the Act.[4] See 42 Pa.C.S.A. § 5348(a)(5) (quoted *supra*) and § 5342(a)(3) which states one of the purposes as:

Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this Commonwealth decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

4. We note also that "parens patriae" jurisdiction would not be appropriate in this case. There was some discussion at the hearing as to whether these children were abandoned by the mother. No such finding was made, however, and the lower court concluded that in fact, although the children had been placed in the custody of the Children's Bureau, no adjudication of dependency had been made.

See also *Commonwealth ex rel. Earl R.D. v. Linde H.S.*, 297 Pa.Super. 78, 443 A.2d 307 (1982).

■ We agree with the interpretation given the Nebraska "significant connection" provision of the UCCJA in a recent opinion by the Nebraska Supreme Court. The Court wrote in *Mace v. Mace*, 215 Neb. 640, 647, 341 N.W.2d 307 (1983):

> The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: Jurisdiction exists only if it is the *child's* interest, not merely the interest of convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. (citation omitted) (emphasis in original).

■ Nor do we believe that the court deprived appellant of her chance to be heard. No permanent custody order was entered here. Compare *Joseph E.H. v. Jane E.H.*, 283 Pa.Super. 109, 423 A.2d 739 (1980).[5] The court could have issued its order at any stage in the proceedings, presumably before any hearing was held. See § 5348(a) *supra*. The order could have been issued on the basis of the facts admitted by the pleadings. Furthermore, the court was within its power in *sua sponte* raising the jurisdiction question. § 5348(b).

■ The court granted temporary custody to the father, pending action by the Kentucky court. 42 Pa.C.S.A. § 5348(e) provides:

---

**5.** Unlike the situation in *E.H.*, appellant was present at the hearing when the lower court asked counsel for information regarding the jurisdiction question. The other cases cited by appellant in support of her argument that she was denied due process are not pertinent to the facts of this case, *Shafer v. Gaal*, 312 Pa.Super. 399, 458 A.2d 1020, 1021 (1983), for example held that records could not be used in custody cases unless the author is present. The transfer of this case to Kentucky was designed to guard against just such a denial of due process.

Disposition.—If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state *or upon any other conditions which may be just and proper,* including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

Given the finding by the court that Pennsylvania has no significant contacts with these parties or their children, the court acted properly in seeing that they were removed from the Commonwealth and returned to the State where jurisdiction properly lies. To have had the children remain in Pennsylvania in foster care when this state has no real contacts with them would surely not have been in the children's best interests. To have returned them to their mother in New Jersey, rather than Kentucky, the appropriate forum, would not have aided resolution of the controversy.

We conclude that the lower court acted in compliance with the Uniform Child Custody Jurisdiction Act and did not deprive appellant of her due process rights. The order is therefore affirmed.