This is a child custody case involving the Parental Kidnapping Prevention Act of 1980 (PKPA). 28 U.S.C. § 1738A (1982). The Alabama court granted custody of a seven-year-old child to the ex-husband's step aunt and uncle.
The mother appeals and we reverse and remand for further proceedings not inconsistent with this opinion.
The mother, Donna Keaton Wheeler, first surrendered custody of her child, Jamie Lee Keaton, in November of 1976 when Jamie was almost six months old. At that time the mother was eighteen years old and was in the process of obtaining a divorce from Jamie's father, Russell E. Keaton. The mother gave her consent to a petition for appointment of legal guardians filed by O.W. and Joyce B. Buck, Russell Keaton's step aunt and uncle. The Bucks were appointed Jamie's legal guardians and given custody of Jamie by a 1976 order of the chancery court in Knoxville, Tennessee, where all the parties lived. Jamie was living with the Bucks at that time and she has lived with them ever since. After her divorce, the mother also lived with the Bucks for some time.
At some point before June 13, 1978, the Bucks filed a petition to adopt Jamie. The mother filed a cross-complaint seeking custody and also requesting that the father be required to pay her child support. On July 6, 1978, the Knoxville court dismissed the adoption complaint for lack of proof of abandonment and dismissed without prejudice the mother's cross-claim saying it must be heard by the same chancellor who considered the original guardianship matter. Thereafter, the Bucks moved from Knoxville to Emporia, Kansas. Although the Bucks testified that the move was made because Mr. Buck lost his job in Knoxville, the mother contended that the move was part of an effort to hide the child from her mother.
On August 11, 1978, the mother filed a complaint in Knoxville Chancery Court asking that the Bucks' guardianship be terminated and that she be awarded custody of Jamie Keaton. When the Bucks could not be located, service of process was had by publication. The Bucks did not enter an appearance, and a default judgment was entered against them on May 22, 1979, the court finding that it was in the best interest *Page 866 
of the minor child that custody be restored to the mother.
On October 25, 1982, after she had traced the Bucks to Fyffe, Alabama, the mother filed an action in DeKalb County Circuit Court to have the Knoxville custody order enforced. The Alabama court held a hearing at which the Bucks and the mother offered evidence, and on June 9, 1983, it issued a modification order. The learned and distinguished trial judge found that because Jamie had not seen her mother in approximately four years, it was in the best interest of the child that she be allowed to stay with the Bucks. The mother was given certain visitation rights.
The mother appeals to this court, arguing that the Alabama court had no authority to modify the Tennessee order which granted her custody. Applying the rules of the PKPA to the instant facts, we agree that the Alabama court had no authority to enter a modification order.
The PKPA and the Uniform Child Custody Jurisdiction Act (UCCJA), codified at § 30-3-20 et seq., Ala. Code (1975), govern interstate child custody disputes. In case of conflicts between the two statutes, the PKPA governs because it is the federal statute. See Flannery v. Stephenson, 416 So.2d 1034, 1038
(Ala.Civ.App. 1982).
Alabama courts are required under the PKPA to enforce according to its terms a sister state's custody determination rendered in accordance with the PKPA; an Alabama court has no authority to modify such order unless the sister state loses jurisdiction or declines to exercise such. See Mitchell v.Mitchell, 437 So.2d 122 (Ala.Civ.App. 1982). In this instance, under the PKPA, as long as one of the contestants remains a resident of the state issuing the original child custody determination, that state retains continuing jurisdiction over the dispute and the exclusive right to issue modifications.28 U.S.C. § 1738A (d). Cf. Bloodgood v. Whigham, 408 So.2d 122
(Ala.Civ.App. 1981) (UCCJA).
The procedure to be followed in an enforcement action filed in interstate child custody cases has been outlined in earlier opinions of this court:
 "A prompt hearing should be held as to whether the Act requires that the sister state's custody judgment be recognized and enforced. The party seeking to enforce the judgment of another state normally would meet their initial burden of proof at that limited hearing by the introduction into evidence of a properly authenticated copy of the judgment relied upon. At such hearing, the parent contesting the foreign judgment would have the right to specifically plead in defense thereto and to present evidence as to the nonexistence of jurisdiction of the sister state rendering the judgment. They could also plead and prove whether other just cause exists under the Act for not recognizing the judgment such as those stated in Section 8; or whether the sister state's judgment was punitive, Brooks v. Brooks, 20 Or. App. 43, 530 P.2d 547 (1975); or whether there was a lack of notice of the sister state's proceedings as is required by Section 4. Wenz v. Schwartze, 598 P.2d 1086 (Mont. 1979). The above examples are not intended to be exclusive, for there may be other valid grounds of contest at that first hearing.
 "Ordinarily, at such initial and limited hearing, the circumstances of the child or children is not then an issue before the court and evidence pertaining thereto is not admissible. State ex rel. Butler v. Morgan, [34 Or. App. 393, 578 P.2d 814
(1978)]. Should the trial court determine after such hearing that such a judgment must be recognized, the court would then enforce the other state's judgment without further proceedings."
Wyatt v. Falhsing, 396 So.2d 1069, 1073 (Ala.Civ.App. 1981).
In the instant case, although the defendants (the Bucks) raised as a defense and offered evidence on the lack of necessary notice under the UCCJA, see §§ 36-1305 and -1306, Tenn. Code Ann. (1983 Supp.), that is, that service by publication was constitutionally insufficient because *Page 867 
the mother did not use due diligence to ascertain the Bucks' exact whereabouts in Kansas, see Baggett v. Baggett,541 S.W.2d 407 (Tenn. 1976), the trial court did not resolve this issue and/or tailor its hearing to the limited inquiry envisioned under the UCCJA; instead it accepted evidence as to the circumstances of the child and issued a custody modification order. This procedure was erroneous. Accordingly, the trial court's judgment must be reversed, and the action remanded for the limited inquiry envisioned under Wyatt for interstate enforcement proceedings.
We note that it would appear that legal custody at this time remains with the Bucks. This custody appears to be such by virtue of the 1976 Tennessee order.
This case is due to be reversed and remanded for proceedings not inconsistent with the above.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.