580 A.2d 320

**Joel BARNDT, Appellee,**

**v.**

**Kathleen Ann BARNDT, Appellant. (Two Cases)**

Superior Court of Pennsylvania.

Argued Sept. 19, 1989.

Filed Aug. 30, 1990.

322

Amy Ershler, Bloomsburg, for appellant.

Susan Muse Hill, Bloomsburg, for appellee.

Before TAMILIA, KELLY and CERCONE, JJ.

KELLY, Judge:

Appellant, Kathleen Barndt, appeals from an order of the Court of Common Pleas of Columbia County. The order granted primary physical custody of her sons, Michael and Kristopher, to their father, Joel Barndt, thus modifying a prior decree issued in North Dakota which had granted the appellant primary physical custody. While the appeal rais-

es questions of substantive error, the sole issue addressed in this opinion is whether the courts of Pennsylvania had subject matter jurisdiction to hear the modification petition of the appellee.

Initially, we consider whether subject matter jurisdiction exists under Pennsylvania law. We find that this determination would require remand for factual determinations not made by the trial court. We note that the present record appears to demonstrate an absence of subject matter jurisdiction under Pennsylvania law. We find remand unnecessary, however, as the undisputed facts establish that even if subject matter jurisdiction could be asserted under Pennsylvania law, a federal statute nonetheless bars assertion of such jurisdiction under the facts of the instant case. Consequently, we vacate the orders of the trial court, and relinquish jurisdiction of this case to the courts of North Dakota.

## FACTS AND PROCEDURAL HISTORY

The relevant facts may be accurately summarized as follows. Joel and Kathleen Barndt were married in 1977 and divorced in 1983. North Dakota had been the marital domicile. During the course of their marriage, Joel adopted Michael, who was Kathleen's child from a former marriage, and Kristopher was born to the couple. Following the divorce, Kathleen, who had been awarded custody, continued living in North Dakota with the boys. Joel continued to live in North Dakota until December 1985, when he moved into his parents' home in Pennsylvania. In June 1986, the boys came to Pennsylvania for an extended visit which had been arranged and agreed upon by Joel and Kathleen. In March 1987, Joel refused to return the children as agreed and instead petitioned the Columbia County court for custody which was granted by order entered April 10, 1987. The order did not address the jurisdiction of the court.

Subsequent to this change in custody Kathleen appealed to the North Dakota courts to prevent enforcement of the Pennsylvania decree. While not agreeing with this Com-

monwealth's assumption of jurisdiction, North Dakota declined to take action conflicting with that of the Pennsylvania courts.

Finally, in May 1988, Kathleen Barndt was afforded a hearing in Columbia County to determine the best interests of Michael and Kristopher. Her appeal raised the deficiencies in the conduct of the hearing, quality of the evidence gathered and considered, as well as the deficiencies in the opinion of the trial court issued subsequent to the hearing. These substantive issues can not be reached here, as our review of the record reveals that the courts of Pennsylvania lacked subject matter jurisdiction in the initial proceeding modifying the North Dakota decree, and in all subsequent custody proceedings.

## I. AUTHORITY TO RAISE SUBJECT MATTER JURISDICTION SUA SPONTE

In order to have the power to determine the right to custody as between litigants, a court must have subject matter jurisdiction over the person of the child. *In re Sagan,* 261 Pa.Super. 384, 396 A.2d 450 (1978); *Commonwealth ex rel. Graham v. Graham,* 367 Pa. 553, 80 A.2d 829 (1951). A court has the inherent power to determine on its own motion whether it has the jurisdiction to decide the cause before it. *Douglas v. City of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); *Harris–Walsh, Inc. v. Dickson City Borough,* 420 Pa. 259, 216 A.2d 329 (1966). Therefore, even if a party fails to raise this issue by objection or exception in the court below, it is still the affirmative duty of our Court to consider the issue of subject matter jurisdiction. *Cathcart v. Crumlish,* 410 Pa. 253, 189 A.2d 243 (1963); *Marcus v. Diulus,* 242 Pa.Super. 151, 363 A.2d 1205 (1976). Orders of a court which is without proper subject matter jurisdiction are without legal force. *Commonwealth v. Miller,* 306 Pa.Super. 468, 452 A.2d 820 (1982); *Commonwealth v. Boerner,* 281 Pa.Super. 505, 422 A.2d 583 (1980).

## II.  APPLICATION OF PA UCCJA

In determining whether the trial court had subject matter jurisdiction we look first to Pennsylvania law.  Unfortunately, because the question of jurisdiction was not addressed in the trial court, factual findings essential to a determination of whether subject matter jurisdiction could be asserted over this case under Pennsylvania law, were not made by the trial court.  Though the trial court must make these factual determinations initially, we note that the present record contains no facts upon which jurisdiction could be based under Pennsylvania law.

This case involves an interstate custody dispute.  The jurisdictional aspects of such disputes are problematic.

Under Article IV, § 1 of the United States Constitution, each state is required to give full faith and credit to the public acts, records and judicial proceedings of every other state.  The codification of this constitutional mandate in 28 U.S.C. § 1738, and its precondition that there be finality of judgment, however, left the full faith and credit clause inapplicable to child custody orders.  By necessity, such orders are modifiable in the rendering state when the best interest of the child so require;  and therefore, such orders lack the necessary finality for protection under the full faith and credit clause.  *Kovacs v. Brewer,* 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958);  *New York ex rel Halvey v. Halvey,* 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947).  Additionally, procedural defects may preclude enforcement under the full faith and credit clause of even arguably "final" custody orders.  *Ford v. Ford,* 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962);  *May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953).  The unfortunate result of this lack of recognition and enforcement of decrees of sister states was the constant uprooting and movement of children from state to state in their parents' efforts to obtain or enforce conflicting custody orders.

In 1977 Pennsylvania became a signatory to the Uniform Child Custody Jurisdiction Act (UCCJA).  The pur-

pose of the Act was to provide stability to the home environment and to family relationships by discouraging continuing controversy over child custody and visitation; to avoid jurisdiction disputes; to deter abductions; to avoid relitigation; to promote comity; and to assure that litigation concerning child custody takes place ordinarily in the state in which the child and his family have the closest connection. *Commonwealth ex rel. Zaubi v. Zaubi,* 275 Pa.Super. 294, 418 A.2d 729 (1980), *affirmed* 492 Pa. 183, 423 A.2d 333 (1980).

In furtherance of its stated purposes, the UCCJA, *as codified in Pennsylvania,* (Pa.UCCJA), includes specific provision for situations in which another state has rendered a prior custody order. Under 42 Pa.C.S.A. § 5355, "[i]f a court of another state has made a custody decree, *a court of this Commonwealth shall not modify that decree unless:* (1) it appears to the court of this Commonwealth that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites *substantially in accordance with this subchapter* or has declined to assume jurisdiction to modify the decree; *and* (2) the court of this Commonwealth has jurisdiction" (emphasis added).

■ The intention of the Pa.UCCJA in creating continuing jurisdiction in the initial decree state was to achieve greater stability of custody decrees, and to avoid forum shopping by insuring that the courts of only *one* state should have responsibility for the custody of a particular child. It was hoped that this would stabilize the home environment of children of divorced parents. In actual practice, as we see in the present case, continuing jurisdiction has often been ignored with jurisdiction assumed inappropriately by a court of a sister state, thus defeating in large measure the intent of the drafters of the uniform act.[1]

The provisions of 42 Pa.C.S.A. § 5344(a) set forth the conditions governing the exercise of jurisdiction over an

---

1. *See generally* Bodenheimer, *Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody and Excessive Modification,* 65 Cal.Law Rev. 978 (1977).

interstate custody dispute under Pennsylvania law. Because the children had resided in Pennsylvania for the past six months, home state status existed to fulfill the requirement of 42 Pa.C.S.A. § 5344(a)(1)(i). We assume that 42 Pa.C.S.A. §§ 5344(a)(3), 5344(a)(4) do not apply. The record reveals that the father's home was satisfactory for placement under 42 Pa.C.S.A. § 5344(a)(5). Hence, the entire question of whether jurisdiction may be asserted properly under Pennsylvania law, turns upon whether the requirement of 42 Pa.C.S.A. § 5344(a)(2) has been met.

Under 42 Pa.C.S.A. § 5344(a)(2), before a Pennsylvania court may assert jurisdiction it must find first that:

> (2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:
>
> (i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and
>
> (ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training, and personal relationships of the child.

The Commissioners' notes explaining the applicable section of the model UCCJA in pertinent part provide:

> Paragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its *purpose is to limit jurisdiction* rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be *maximum* rather than *minimum* contact with the state.

Uniform Child Custody Jurisdiction Act § 3. (Emphasis added).

Paragraph (2) of the comments refers to what has been adopted as the maximum significant contacts test of 42 Pa.C.S.A. § 5344(a)(2). Courts of this Commonwealth have followed the rationale of the uniform act's comments in construing the "significant contacts" test as a *maximum* significant contacts test. *Aldridge v. Aldridge,* 326 Pa.Super. 49, 473 A.2d 602 (1984) (Kentucky, not Pennsylvania, had proper jurisdiction as that forum would provide the optimum access to relevant evidence on child and family); *Commonwealth ex rel Earl R.D. v. Linda H.S.,* 297 Pa.Super. 78, 443 A.2d 307 (1982) (Vermont had closer connection with child and mother and more substantial evidence was available there than in Pennsylvania). Indeed, Pennsylvania courts have gone so far as to prefer maximum significant contacts over home state status in determining jurisdiction. *Bem v. Bem,* 316 Pa.Super. 390, 463 A.2d 16 (1983) (significant connections and substantial evidence is sufficient for jurisdiction despite home state jurisdiction elsewhere); *Matter of DLS,* 278 Pa.Super. 446, 420 A.2d 625 (1980) (separate basis for jurisdiction exists because of Pennsylvania's strong contacts with both parents and children and the availability of evidence); *Joseph E.H. v. Jane E.H.,* 283 Pa.Super. 109, 423 A.2d 739 (1980) (significant contacts existed despite home state status elsewhere).

Application of the maximum significant contacts test to the facts of record in this case would seem to establish a clear absence of jurisdiction under Pennsylvania law. At the time of the petition the boys had only been in Pennsylvania 9 months, and their father had only been here 15 months. It does not appear that their mother had visited Pennsylvania with them for at least 8 years, as Kristopher (age 8 at the time) had never previously been in Pennsylvania, and had never even met his paternal grandparents. (N.T. at 308). Likewise, Michael (age 11) had not seen the paternal grandparents since before his third birthday. (N.T. at 39).

There was no evidence whatsoever concerning Kathleen's custodial qualifications available in Pennsylvania. Joel, though raised in Pennsylvania, left at age 18. (N.T. at 9). He had only returned six months prior to the boys' visit. (N.T. at 7). From the transcript of the hearing, it also appears little could be learned about Joel's custodial qualifications in Pennsylvania at the time he petitioned for custody in March 1987, as he was unemployed most of the time between December 1985 through March 1987, and lived privately with his elderly parents without any apparent ties to the community which would be probative of his custodial qualifications. (N.T. at 38–39).

In view of the extreme paucity of evidence that was available in this Commonwealth in March of 1987 pertaining to the welfare of the children, the comparatively insignificant length of time spent here by the boys and their father, as opposed to the time spent by them in North Dakota, and the continued residence of the custodial parent in North Dakota, we find insufficient evidence upon which an exercise of jurisdiction could be premised by our courts.

However, because the record is arguably undeveloped in this respect, we would be extremely reluctant to vacate the trial court's orders and relinquish jurisdiction to the North Dakota courts on this basis alone. Rather, prudence would seem to dictate a remand for a full inquiry and determination of the factual issues pertinent to the application of the maximum contacts test before rendering such a decision. Federal law, however, renders remand unnecessary.

## III. APPLICATION OF FEDERAL LAW

The UCCJA's intent was to create uniformity in the handling of jurisdictional disputes in custody cases.[2] It achieved only limited success, due to the variations in the UCCJA as adopted by each of the states, and the differences in interpretation from court to court within those states. Consequently, there remained wide room for forum

2. *See* Commissioners' Prefatory Note to the UCCJA.

shopping, and the flow of children and cases from state to state continued.[3] Federal legislation was finally enacted to bolster the UCCJA, and to enhance uniformity in interpretation and resolution of jurisdictional conflicts involving interstate custody disputes.

■ In 1980, the United States Congress enacted the Parental Kidnapping Prevention Act (PKPA). The title of the act is misleading and unfortunate, as it was by no means limited to criminal matters relating to kidnapping. Rather, one of the principle purposes of the PKPA was to protect the right of a decree issuing state to exercise exclusive continuing jurisdiction over its child custody orders in certain cases, and to channel custody litigation into the court having continuing jurisdiction by requiring states to give full faith and credit to the custody decrees of states retaining jurisdiction and preventing the issuance of competing decrees. *Mark L. v. Jennifer S.*, 133 Misc.2d 454, 506 N.Y.S.2d 1020 (1986); *States ex rel. Valles v. Brown,* 97 N.M. 327, 639 P.2d 1181 (1981); *Nielsen v. Nielsen,* 472 So.2d 133 (La.App.1985). To this end, the PKPA established national standards to determine jurisdiction in interstate custody disputes. *Voninski v. Voninski,* 661 S.W.2d 872 (Tn.App.1982)

Congress' intent to limit the states in the assumption of jurisdiction is evident from the relevant text of the statute:

### § 1738A.  Full faith and credit given to child custody determinations

(a) The appropriate authorities of *every State shall enforce according to its terms,* and *shall not modify* except as provided in subsection (f) of this section, *any child custody determination made consistently with*

---

**3.** *See* Bodenheimer, *Progress Under the Uniform Child Custody Jurisdiction Action and Remaining Problems: Punitive Decrees, Joint Custody and Excessive Modification,* 65 Cal.Law Rev. 978 (1977); Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA,* 14 Fam.Law.Q. 203 (1981).

*the provisions of this section by a court of another State.*

\*    \*    \*    \*    \*    \*

(c) A child custody determination made by a court of a State is consistent with the provisions of this section *only if—*

(1) such court *has jurisdiction under the law of such State; and*

(2) *one* of the following conditions is met:

(A) such state (i) *is the home State* of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, *and a contestant continues to live in such State;*

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection which such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of a child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

    (E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

    (d) *The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.*

    (f) *A court of a State may modify a determination of the custody of the same child made by a court of another State, if—*

        (1) it has jurisdiction to make such a child custody determination; *and*

        (2) *the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.*

28 U.S.C. § 1738A. (Emphasis added).

First, the statute provides for recognition and enforcement of *all* decrees made consistent with the provisions of 28 U.S.C. § 1738A. Under 42 Pa.C.S.A. § 5355, the courts of this Commonwealth were permitted to decide whether the decree complied with "jurisdictional prerequisites substantially in accordance with this act." The PKPA has eliminated the opportunity for a state to disregard a foreign decree because of differences in the state's statutory enactment or jurisdictional interpretations of UCCJA provisions. 28 U.S.C. § 1738A(c)(1).

The PKPA also grants a priority to home state jurisdiction in initial custody petitions. Significant connections can only be used as a basis to assume jurisdiction if there is no home state, not as an alternative to the home state. 28 U.S.C. § 1738A(c)(2)(A) and (B).

Finally, and most importantly, the PKPA creates a separate basis for exclusive continuing jurisdiction in the state which issued the original decree. So long as the original decree state continues to have jurisdiction under its own law, and remains the residence of the child *or any contes-*

*tant,* it has *exclusive* continuing jurisdiction over all future custody actions involving that child. 28 U.S.C. § 1738A(c)(2)(E) and (d). That includes the exclusive right to issue modifications or changes in custody. 28 U.S.C. § 1738A(c)(2)(E), (d) and (f); *see also Wheeler v. Buck,* 452 So.2d 864 (Ala.Civ.App.1984); *Heartfield v. Heartfield,* 749 F.2d 1138 (5th Cir.1985); *Kumar v. Santa Clara County Superior Court,* 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003 (1982); *Bahr v. Bahr,* 442 N.Y.S.2d 687, 108 Misc.2d 920, *aff.* 458 N.Y.S.2d 247, 91 A.D.2d 1010, *appeal denied* 454 N.E.2d 1310, 60 N.Y.2d 640, 467 N.Y.S.2d 567 (1983); *Flannery v. Stephenson,* 416 So.2d 1034 (Ala.Civ.App. 1982); *Yacco v. Durley,* 457 N.Y.S.2d 384, 117 Misc.2d 69 (1982).

■ In spite of the basic similarities between the PKPA and the Pa.UCCJA provisions, it is apparent from the differences outlined above that there will be situations in which the application of each will yield a different result. In cases of conflict between the two statutes, it is clear that the PKPA must prevail over any contrary laws of the states in the area of recognition and modification of a sister state's custody decree. *See* 28 U.S.C. § 1738A; *see also In re McBride,* 469 So.2d 645 (Ala.Civ.App.1985); *Olivia H. v. John H.,* 497 N.Y.S.2d 838, 130 Misc.2d 756 (1986); *Wheeler v. Buck, supra.* Consequently, we cannot make jurisdictional decisions based solely on the Pa.UCCJA, without regard to the PKPA.

Under the PKPA there must be an initial determination of jurisdiction under our own statute, 42 Pa.C.S. § 5344. *See* 28 U.S.C. § 1738A(c)(1). If jurisdiction properly may be assumed under Pennsylvania law, the Pennsylvania court must then look to jurisdiction prerequisites of 28 U.S.C. § 1738A(c)(2)(A) through (E). *See Evans v. Evans,* 688 F.Supp. 639 (M.D.Tenn.1987); *Serna v. Salazar,* 98 N.M. 648, 651 P.2d 1292 (1982). If the court cannot satisfy any *one* of the PKPA provisions, then the federal statute *precludes* the Commonwealth's assumption of jurisdiction, and

the petition *must* be denied for lack of subject matter jurisdiction.

However, *even if* the Commonwealth can satisfy both § 5344 of Title 42, *and* the PKPA, it may not automatically assume jurisdiction over the dispute. The existing decree of the sister state must be reviewed for compliance *at the time of issuance* with the provisions of the PKPA outlining the conditions for jurisdiction. *Kumar v. Santa Clara County Superior Court, supra; In re Custody of Thoren-sen,* 46 Wash.App. 493, 730 P.2d 1380 (1987); *In re McBride,* 469 So.2d 645 (Ala.Civ.App.1985). If the *original decree* satisfied both PKPA and the laws of the issuing state when entered, then consideration must be given to the possibility that the state which issued the original decree may have *exclusive* continuing jurisdiction over all custody matters under § 1738A(c)(2)(E) and § 1738A(d) and (f). The decree state must, as of the filing of the petition, no longer have jurisdiction under its *own* laws, *or* not satisfy one of the five PKPA jurisdiction conditions in order for this Commonwealth to assert jurisdiction over the dispute.

Should the review of the applicable state law and the PKPA disclose that the decree state still has continuing jurisdiction, the courts of this Commonwealth *must* refuse to hear the petition and direct the moving party to bring their petition to the courts of the original decree state. Should that state refuse to exercise jurisdiction, *then and only then,* may the petition be refiled in the courts of this Commonwealth.

In applying the outlined procedure to this case we will assume, *arguendo,* that Pennsylvania satisfies the first step.[4] Having made this assumption, the propriety of the trial court's exercise of jurisdiction over this dispute turns

---

**4.** Even though not specified, the trial court's action implies jurisdiction was assumed on the basis of the Barndt boys presence in this Commonwealth in excess of the minimum statutory time allowed under 42 Pa.C.S.A. § 5344(a)(1)(ii). While it is uncontested that the boys had been present in this Commonwealth long enough to establish home state jurisdiction, as previously explained, it is far from clear that maximum significant contacts existed as required. *See* 42 Pa.C. S.A. § 5344(a)(2).

on the question of whether North Dakota retained *exclusive* continuing jurisdiction under Section 1738A(d). If at the time of the order North Dakota satisfied its own state law on jurisdiction (which was its version of the UCCJA) and the PKPA, the decree must be honored in this Commonwealth.

■ There is absolutely no question that North Dakota had proper subject matter jurisdiction to enter the original decree. *Both* parents *and* the children had resided in North Dakota for the preceding *five years.* Consequently, the decree was not subject to modification in Pennsylvania unless North Dakota, at the time the petition for change in custody was filed in March 1987, had lost continuing jurisdiction over the case.

To determine whether or not continuing jurisdiction exists, we again look to North Dakota law to decide whether it would allow for *present* jurisdiction *and* whether one of the 28 U.S.C. § 1738A(c)(2) conditions is met. If both are satisfied, *only North Dakota* has jurisdiction to entertain the petition for change of its custody decree.

North Dakota's jurisdictional alternatives are in keeping with the UCCJA. *See* North Dakota Cent.Code § 14–14–03. North Dakota case law clearly demonstrates that it would construe North Dakota's UCCJA so as to permit the assertion of continuing jurisdiction under facts such as presented here.

In *Dennis v. Dennis*, 366 N.W.2d 474 (N.D.1985), North Dakota issued a custody order in 1981. The children and custodial parent moved to Iowa. Three years later the non-custodial parent, who was still living in North Dakota, petitioned for modification. The North Dakota Supreme Court held that a significant connection with the forum would be sufficient for their continuing jurisdiction under North Dakota law, and to satisfy the continuing jurisdiction of 28 U.S.C. § 1738A(c)(2)(E), which requires only that the state law provide jurisdiction, and the state remain the residence of the child *or any party.* 28 U.S.C. § 1738A(d). (Emphasis added). Subsequent to *Dennis*, in *Hedstrom v.*

*Berg,* 421 N.W.2d 488 (N.D.1988), North Dakota still used significant connections to satisfy their own jurisdiction as mandated by 28 U.S.C. § 1738A(d) when ruling on a non-custodial parent's right to maintain action in North Dakota after the custodial parent and children relocated.

After reviewing the law in effect at the time of the filing of the March 1987 petition and the current cases, it is apparent that North Dakota would have asserted the authority to exercise jurisdiction over Joel Barndt's petition under North Dakota law. Kathleen has been at all times, since the entry of the original decree through the filing of this appeal, a resident of North Dakota. There is no reason for us to believe that North Dakota, in interpreting their UCCJA, would provide *less* protection to a resident *custodial* parent than they have already provided to resident *non-custodial* parents. Since North Dakota, at the time of the petition, would have had jurisdiction under its own law and under the PKPA, *exclusive* continuing jurisdiction remained in North Dakota and the Pennsylvania courts did not have subject matter jurisdiction over this case.

## CONCLUSION

Based on the foregoing, we find that the trial court should have refused to entertain the petition for custody modification and should have instructed Joel Barndt to direct his petition to the North Dakota courts. As Pennsylvania was without subject matter jurisdiction to modify the North Dakota decree when the trial court entered its orders relating to this custody dispute, the orders are nullities and must be vacated.

The order of April 10, 1987 and all subsequent orders pertaining to the custody of Michael and Kristopher Barndt entered in the Courts of this Commonwealth are hereby VACATED. Physical and legal custody of Michael and Kristopher still lies with Kathleen Barndt pursuant to the North Dakota decree, therefore, Joel Barndt is obligated to return physical custody of the children to Kathleen Barndt in compliance with the North Dakota custody decree with-

out delay. Any modification of the custody arrangements sought by Joel Barndt must be brought in the Courts of North Dakota.

Orders VACATED, Jurisdiction Relinquished to the Courts of North Dakota.

TAMILIA, J., filed a dissenting opinion.

CERCONE, J., filed a concurring opinion.

TAMILIA, Judge, dissenting:

While I believe the analysis by the majority is correct up to the point where the Federal Parental Kidnapping Prevention Act (PKPA) is discussed, I respectfully dissent from the majority in its finding the federal law requires relinquishing jurisdiction to North Dakota. The majority has overstated the implications of the Federal Act as to the facts of this case and attributes a fixed immutable jurisdictional override to all interstate (and by implication intrastate) custody actions.

I believe the majority is correct in stating the facts are not so clear that we may reverse the actions of the Columbia County Court in awarding custody to the father and that remand for further hearing on issues relating to significant contacts would clearly be in the children's best interest. Having found that under the Uniform Child Custody Jurisdiction Act (UCCJA), 42 Pa.C.S. § 5341 *et seq.*, Pennsylvania has at least colorable jurisdiction, and although reluctantly North Dakota has refused to entertain jurisdiction, no reading of the PKPA compels a finding that, despite a failure to address the jurisdictional issue, the PKPA requires this Court to address that issue and find as a matter of law that jurisdiction in Pennsylvania does not exist.

The majority cites no Pennsylvania cases which attribute such omnipotent attributes to the federal law that a per se finding of lack of jurisdiction under the facts of this case is required. The law espoused in other jurisdictions is at best evolving and relatively little assistance has as yet been

forthcoming from federal authorities. There are two ways in which federal legislation may impact on causes of actions arising under state laws such as domestic relations law. The first and most intrusive is to preempt state jurisdiction and allow such matters to be tried in federal courts. Domestic relations, particularly divorce and custody matters since they frequently involve interstate parties and legal actions, provides a tempting target for the exercise of expansionistic federal policies. This is almost assuredly an approach which will not be taken as the federal judiciary is overwhelmed and seriously behind in its handling of civil and criminal cases. A recent study by the Federal Judiciary, chaired by Judge Joseph Weis, is recommending a serious reduction in federal jurisdiction in most criminal and some civil areas, thrusting these matters into the arena of the state courts.

The Supreme Court, when it has been called upon to address the issue of federal versus state jurisdiction in family matters, including custody and divorce, has exempted such proceedings from federal jurisdiction. *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858). Despite the act of Congress giving apparent federal jurisdiction, many authorities and states reviewing this legislation have failed to apply the federal statute in an absolutist manner as would the majority. To do so creates a 180° reversal in the long progression of family law, in which the federal courts have wisely left decisions in family matters to the various state courts. The legislative notes accompanying the PKPA do not indicate a congressional mandate to deviate from that path. H. Clark, *The Law of Domestic Relations in the United States* (2d ed. 1987), discusses this problem:

> If the possible conflicts between the PKPA and the UCCJA are not enough to warm the heart of the most technical of lawyers, there is always the question whether the federal courts have jurisdiction in custody matters by virtue of the PKPA. The "domestic relations exception" to federal jurisdiction is discussed in another section, in

which are cited numerous cases in which the federal courts have expressed reluctance to decide custody disputes. The enactment of the PKPA provides another occasion for the debate over the "domestic relations exception". In addition it raises the question whether the PKPA itself creates federal question jurisdiction over custody disputes as a way of resolving interstate conflicts. Although there is persuasive material in the legislative history of the PKPA to the effect that that Act was not intended to establish federal jurisdiction over jurisdictional conflicts between state courts in custody cases,[98] some courts have held that where a state court has violated the PKPA by refusing to enforce the custody decree of another state court, a federal court has federal question jurisdiction to enjoin that violation and enforce the Act. Due to the obvious impact which the PKPA and UCCJA have upon the merits of custody decisions, the federal courts in these cases may well have embarked upon a course which will involve them more deeply in the decision of custody conflicts than many judges will find desirable, and than the usual application of the "domestic relations exception" would permit. *The extent of federal involvement in these cases could be reduced to some extent by the imposition of a requirement of the exhaustion of state judicial remedies before recourse to the federal courts.*

---

[98]. Joint Hearing before the Subcommittee on Criminal Justice of the Committee on the Judiciary and the Subcommittee on Child and Human Development of the Committee on Labor and Human Resources, U.S. Senate, 96th Cong., 2d Sess. on S. 105 (1980), statement of Congressman Duncan, co-sponsor of the bill, at 19, 20, indicating a desire to keep federal interference in custody to a minimum. See

also Coombs, Interstate Child Custody: Jurisdiction, Recognition, and Enforcement, 66 Minn.L.Rev. 711, 825 (1982).

*Id.* at p. 478 (emphasis added; footnotes 97 and 99 omitted).

This leads to the second basis upon which reliance may be placed on federal law to effect decisions in domestic relations matters. Relying on the supremacy clause of the Federal Constitution, a case can be made that once federal law or courts have spoken in matters relating to rights and procedures cognizable in state courts, federal law preempts the field and must be followed. This, however, is not a given, and to avoid undue stress in relation to state versus federal rights, federal law generally will not supersede state law except where state law has not provided an adequate remedy for protection of rights. This is generally recognized in the area of civil rights and criminal law. The pressure to intercede in civil matters and family matters, such as this case, is far less clear. The PKPA does make it clear that it is a companion act to the UCCJA and does not supersede it. Only when the UCCJA fails to provide for the rights which it intended to protect will the PKPA be applied. Since the federal courts have questionable jurisdiction in implementing the act, we must all proceed with caution in compelling the application of the act to state court jurisdiction under the supremacy clause.

The majority creates a mosaic of interlocking state decisions to reach the conclusion that Pennsylvania either lacked jurisdiction under the UCCJA or that despite jurisdiction arguably being present under that Act, provisions of the PKPA superseded the UCCJA to deny jurisdiction in Pennsylvania and vest it in North Dakota. The reasoning of the majority becomes too attenuated and esoteric in reaching its conclusions. North Dakota, in fact, declined any right it had to exercise jurisdiction, deferring to Pennsylvania. The majority acknowledges the record is inadequate to determine Pennsylvania was without jurisdiction in this case and more testimony is needed to determine whether the factual issue of maximum contacts test was met (Majority Op., at 329–332, 580 A.2d 324–325) but then turns to federal law to reach a different conclusion.

Since the effect of the PKPA is not clear, and federal decisions do not specify how far that law may deviate from the federal exception in domestic relations, we should not be too hasty to reject our previous holdings and in one fell swoop adopt a position which takes us to the furthest reaches of the federal law. A conservative Supreme Court could reasonably expect to limit the federal dominance in this area, which is traditionally relegated to the states. One of the clearest reasons for *not* applying the PKPA to an interstate case involving modification of an Order entered in a sister state is where the initial state declined to exercise jurisdiction. *See* UCCJA § 14. Clark addresses this issue in the following manner:

With advent of the UCCJA and the PKPA the analysis of the continuing jurisdiction problem has changed but the uncertainty and unpredictability of result in the case law has not been reduced. Although the problem was recognized by all who dealt with interstate custody, for some unexplained reason it was not explicitly covered by the UCCJA. The crucial section of that Act is section 14 [50] which provides that the custody decree of another state shall not be modified unless 1) the court of the other state does not presently have jurisdiction substantially in accord with the Act or has declined to exercise jurisdiction to modify, and 2) the court of this state does have jurisdiction. The language of this section must of course be construed with the statutory purposes in mind, particularly those purposes related to the avoidance of the relitigation of custody disputes and to the elimination of continuing controversies over custody. The Commissioners' Comments to section 14 assert that in order to achieve those purposes petitions for modification must be submitted to the state rendering the initial decree so long as that state meets the requirements for jurisdiction imposed by section 3 of the Act. Unfortunately those requirements are often so difficult to apply to specific situations that the Commissioners' precepts are not helpful in most instances.

.     .     .     .     .

The PKPA does have a provision explicitly defining the extent of continuing jurisdiction, but it just refers to the local law of the state which entered the decree, which of course now means the UCCJA.[54]

---

50. UCCJA § 14 reads: "(a) If a court of another state has made a custody decree, a court of this State shall not modify that decree unless (1) it appears to the court of this State that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this Act or has declined to assume jurisdiction to modify the decree and (2) the court of this State has jurisdiction.

.     .     .     .     .

54. 28 U.S.C.A. § 1738A(d) reads as follows: "(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant." Subsection (c)(1) of the section provides: "(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—(1) such court has jurisdiction under the law of such State;".

The modification provision of PKPA is similar to that of the UCCJA. 28 U.S.C.A. § 1738A(f) reads as follows: "(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination."

*Id.* at p. 482 (footnotes 51, 52 and 53 omitted).

Despite the fact the federal legislation was enacted to fill the gaps left by the UCJJA, and to overcome its inadequacies, significant problems are suggested by authorities following this legislation which could lead to greater confusion with no greater solutions than before. Clark goes on to say:

The cases decided since the enactment of PKPA exhibit the same ambivalence on the question whether jurisdiction continues after the custodian and the child leave the state. If anything, the injection of the PKPA into the continuing jurisdiction issue has amplified the confusion

already evident under the UCCJA. The cases holding that the jurisdiction continues generally are based upon a technical reading of the PKPA. The cases holding that the initial jurisdiction did not continue follow the same pattern, although there is sometimes a tendency to make continuing jurisdiction turn on the continuance of the state as the child's home state, a position which, as has already been stated, is not supported by the language of the PKPA.

*Id.* at p. 485 (footnotes omitted).

Finally, I am very concerned that the majority passed over, without serious consideration, the factual aspects of this case to reach the jurisdictional issue when jurisdiction was never raised in the trial court or on appeal. The only issues presented to the trial court were the standard issues in matters of custody, that is, whether or not there was a change of circumstances and what was in the best interest of the children. On appeal, the complete statements of question presented is as follows:

1. The court made its decision who should get custody based on the principle of the best interests of the children.

a. When there is an existing custody order, whether the lower court should first determine if a substantial change in circumstances has occurred since the entry of an existing Order.

b. If the correct standard is best interests of the children, whether the lower court drew the proper inferences from the evidence presented when deciding which parent should get custody.

2. Whether the lower court made a thorough analysis of the evidence on which to base its decision regarding custody.

3. Whether the court had a full and complete record on which to base its decision.

Brief for Appellant at p. 3.

The only request for exercise of North Dakota jurisdiction was to hold an evidentiary hearing to inquire into the

fitness of the mother, because relevant witnesses were available in North Dakota and it would not have been cost effective to make such an inquiry in Pennsylvania (Brief for Appellant at pp. 47–48).

The one-year agreement by the mother to have the children reside in Pennsylvania raises serious question as to whether this type of custody case was within the contemplation of the drafters of the PKPA. The majority, in sua sponte injecting the question of jurisdiction and applying the PKPA to this case, in face of the refusal of the North Dakota court to assume jurisdiction and the requirement that the PKPA must follow state law, which would treat such action as a release of jurisdiction, creates an untenable basis for its decision. The PKPA does not apply in this case and its application in such a broad sweeping fashion as proposed by the majority is a dangerous precedent which will require its application in every interstate custody case in Pennsylvania, whether the facts warrant it or not. As such, it will immeasurably increase the complexity, not to mention the confusion which will be injected into these matters, when the most basic approach serves the interest of justice and the needs of the litigants.

I would decide the case on its merits or at most remand for further hearing on the relative fitness of the parents and the best interest of the children since the mother alleges, with some reason, she has had little opportunity to present her witnesses on that issue.

To certify this case to North Dakota under the theory espoused by the majority cannot be justified.

CERCONE, Judge, concurring:

I agree that the order of the lower court awarding custody to appellee Joel Barndt should be vacated because the lower court lacked subject matter jurisdiction to hear the custody issue presented by this case. While the courts of this Commonwealth generally have jurisdiction in custody matters, where there is a prior order of custody in another state involving the same parties and the same

children, the courts of this Commonwealth lack subject matter jurisdiction to modify that decree under both the Uniform Child Custody Jurisdiction Act (UCCJA), enacted in Pennsylvania at 42 Pa.C.S.A. § 5341 *et seq.,* and the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. To hold otherwise would be to defeat the purposes of both enactments, which include, *inter alia,* to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.

.    .    .    .    .

(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.

(6) Avoid relitigation of custody decisions of other states in this Commonwealth insofar as feasible.

(7) Facilitate the enforcement of custody decrees of other states.

42 Pa.C.S.A. § 5342. *Accord* 28 U.S.C. § 1738A (Congressional Findings and Declaration of Purposes for Parental Kidnapping Prevention Act of 1980).

UCCJA requires that the state of the initial custody decree have exclusive continuing jurisdiction of custody matters involving the original parties and children. *See* 42 Pa.C.S.A. § 5355; *Commonwealth ex rel. Zaubi v. Zaubi,* 275 Pa.Super. 294, 418 A.2d 729, *aff'd* 492 Pa. 183, 423 A.2d 333 (1980). It does not recognize the concept of concurrent state jurisdiction to hear a modification petition.[1] The PKPA clarifies and strengthens the concept of continuing state jurisdiction to modify an original decree, a necessity which arose due to misinterpretations of UCCJA by the adopting states, as well as the existence of "havens" for

---

1. *See* Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA,* 14 Fam.Law Q. 203, 214–17 (1981).

child snatchers in states which had not enacted UCCJA.[2] The language of PKPA clearly indicates the intent of Congress to require the states to give full faith and credit and not to modify the custody decrees of other states. 28 U.S.C. § 1738A(a).

In the instant case, there is no doubt that the petition for custody filed by Joel Barndt in the Court of Common Pleas of Columbia County in March, 1987 was a petition for modification because a prior award of custody had been made to appellant by order of the courts of North Dakota in May, 1983. It is further clear from the record that Michael and Kristopher Barndt were residing in Pennsylvania in March, 1987 pursuant to the "reasonable visitation" provisions granted to appellee under the North Dakota decree. The Columbia County court's assertion of its jurisdiction in this situation set up an interstate custody dispute of the type which both UCCJA and PKPA were specifically enacted to prevent.[3] It is extremely unfortunate, although understandable given the confusion this issue has generated in the courts, that the lower court in this case was not more enlightened as to the proper interpretation of the state and federal statutes regulating interstate custody issues. Had the lower court properly applied the concepts and requirements of UCCJA and PKPA in regard to petitions for modification of a valid custody order previously issued in another state, it is probable that this lengthy litigation in

2. *See* Note, *The Parental Kidnapping Prevention Act—Analysis and Impact on Child Custody Jurisdiction,* 27 N.Y.L.Sch.L.Rev. 553, 564–65 (1983).

3. I would find North Dakota's declination of jurisdiction in August, 1987 to be based on erroneous legal principles, including an over-reliance on Pennsylvania's misguided assertion of jurisdiction as well as the North Dakota court's own misinterpretation of UCCJA (enacted in that state). The North Dakota court relied on concepts relevant to the concurrent jurisdiction of two competing states in an initial determination of custody. Such considerations are not relevant to a modification petition except in unusual circumstances. *See* Bodenheimer, *supra* note 1. In addition, I would not find it proper for a Pennsylvania court to assert its jurisdiction prior to a declination of jurisdiction by the decree-issuing state, which is what occurred in the instant case. The Columbia County court should have declined jurisdiction and directed appellee to file his petition for modification of custody with the courts of North Dakota.

Pennsylvania could have been easily avoided along with the resultant heartbreak, uncertainty, and grief which has likely been experienced by the parties, particularly appellant, and the children. At the risk of redundancy, it cannot be too strongly emphasized that the UCCJA and PKPA were enacted to prevent this precise occurrence.

I agree with Judge Kelly that the order of the court of Columbia County of April 10, 1987 and all subsequent orders pertaining to the custody of Michael and Kristopher Barndt must be vacated, and legal custody of the children returned to appellant pursuant to the 1983 North Dakota decree. If Joel Barndt seeks modification of custody under that order, he must do so in the courts of that state.