**Burghardt v. Burghardt**

C.P. of Carbon County, no. 96-0103.

*Charles A. Banta,* for plaintiff/respondent.
*Nancy P. Wallitsch,* for defendant/petitioner.

LAVELLE, *P.J.,* July 17, 1996—

## AMENDED MEMORANDUM OPINION AND ORDER

Before us are the preliminary objections of Frances Marie Burghardt challenging Carbon County as the proper venue to hear the custody petition of Carl Stanley Burghardt.

### PROCEDURAL HISTORY

This custody proceeding was originally brought as a separate count of a divorce action filed in the Court of Common Pleas of Northampton County (docket no. 1994-C-8700) on October 31, 1994. By agreement of the parties a custody order was entered on November 18, 1994 awarding primary physical custody of Nicholas and Sara, the minor children, to Mother. Father was granted partial custody and visitation.

In response to the petition of Mother, a supplemental order was entered on April 21, 1995, again by agreement of the parties, continuing primary custody with Mother and allowing for the relocation of Mother and the chil-

dren to the State of Alabama. An additional order was entered on July 21, 1995 which required Mother to exercise her parental authority to ensure a continued relationship between Father and his children. Thereafter, on or about August 1, 1995, Mother and children relocated to Smiths, Lee County, Alabama.

Father filed a petition to modify custody on December 6, 1995 seeking primary custody. Northampton County's special custody master, on hearing that petition, recommended that the case be transferred to Carbon County, and Judge Freedberg by order dated January 5, 1996 transferred the case to us. On February 12, 1996, Mother filed her preliminary objection to venue. After hearing and argument on the preliminary objections, we make the following:

## FINDINGS OF FACTS

(1) The parties were married in 1976 and during the marriage had two children, Nicholas (DOB March 24, 1982) and Sara (DOB December 25, 1984). They lived in Palmerton until 1987, then moved to a house in Northampton Borough, Northampton County where they lived with their children until they separated in 1994.

(2) Father currently lives in Lehighton in Carbon County.

(3) Mother lived in Northampton County with the children after the separation.

(4) Mother and children relocated, with court sanction, to Lee County in the State of Alabama on or about August 1, 1995 and have resided there since that time.

(5) Mother has filed custody proceedings in Lee County, Alabama to DR 96-1-122.

(6) This court contacted by telephone the Honorable Robert M. Harper, circuit judge of Lee County, to discuss the custody proceedings, and Judge Harper agreed to defer any action in Alabama until Carbon County decides the venue issue.

(7) When Father filed his petition to modify custody on December 6, 1995 in Northampton County, Pennsylvania, Mother and the children were not residents of Carbon County but residents of Lee County, Alabama.

(8) Alabama has been the home state of Mother and the children for the past 10 months.

(9) Alabama is the state in which there exists substantial evidence concerning the children's present and future care, protection, training and relationships as well as witnesses relevant to these issues.

(10) The only party who has contact with Carbon County is Father who moved here in 1994.

## DISCUSSION

At the outset we note that we have carefully considered and evaluated Mother's actions in relocating to Alabama. The move received court approval and was with the agreement of Father, although he now indicates that he wishes to change his mind. We are satisfied from Mother's testimony that Mother's move was to obtain employment for herself in an area where she had a sister and was not for the purpose of escaping the jurisdiction of the Pennsylvania courts. We note that Mother has returned to Pennsylvania and has appeared at all proceedings in this state when requested.

We recognize that pursuant to the Uniform Child Custody Jurisdiction Act, both Pennsylvania and Alabama could exercise jurisdiction. Both states fall within the definition of a "home state" for jurisdictional pur-

poses. Our decision as to whether or not to transfer will be based on the doctrine of "forum non conveniens," which of necessity involves a balancing of the interests of the parties and the welfare of the children.

Section 5348 of the Uniform Child Custody Jurisdiction Act Paragraph 23 Pa.C.S. §5348 provides as follows:

"23 Pa.C.S. §5348 INCONVENIENT FORUM

"(e) Disposition. If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum."

The UCCJA at 23 Pa.C.S. §5348(c) enumerates some of the factors that a trial court may consider in deciding whether to defer jurisdiction to another forum.

"23 Pa.C.S. §5348 INCONVENIENT FORUM

"(c) Factors to be considered. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

"(1) If another state is or recently was the home state of the child.

"(2) If another state has a close connection with the child and his family or with the child and one or more of the contestants.

"(3) If substantial evidence concerning the present or future case, protection, training, and personal re-

lationships of the child is more readily available in another state.

"(4) If the parties have agreed on another forum which is no less appropriate.

"(5) If the exercise of jurisdiction by a court of this Commonwealth would contravene any of the purposes stated in section 5342 (relating to purposes and construction of sub-chapter)."

In our evaluation of these factors, we first note that Alabama is now and has been for the past 10 months the home state of Mother and the children. Mother is currently employed there. The children's teachers, day care workers, health care workers and therapists are all more clearly connected to the children's residence in Alabama. Both parties have retained counsel in Alabama to litigate the custody issues pending there and thus would be in a position to proceed with promptitude. These factors persuade us that it would be in the children's interest that Alabama decide current issues involving their custody.

Based on the foregoing analysis and reasons, we believe that the transfer of this case to Alabama is consistent with the purposes of the Uniform Child Custody Jurisdiction Act, and not a reward to a recalcitrant litigant attempting to avoid the jurisdiction of the local court. See *e.g. Aldridge v. Aldridge,* 326 Pa. Super. 49, 473 A.2d 602 (1984) and *Gulla v. Fitzpatrick,* 408 Pa. Super. 769, 596 A.2d 851 (1991).

For the foregoing reason, we enter the following

ORDER

And now June 24, 1996, upon consideration of the preliminary objections of defendant/petitioner in the form of a petition for change of venue pursuant to

Pa.R.C.P. §1028(a)(1) and 23 Pa.C.S. §§5344, 5348, and after hearing thereon, it is hereby ordered and decreed that the petition for change of venue is hereby granted.

It is further ordered and decreed that pursuant to Pa.R.C.P. §1915.2(d) that the prothonotary is directed to transfer the above-captioned matter to the County Justice Center of Lee County, Opelika, Alabama. The costs and fees for said transfer and removal of record are to be placed on the plaintiff/respondent.