657 A.2d 964

**James J. BLACK, Jr., Appellant,**

v.

**Susan D. BLACK, Appellee.**

Superior Court of Pennsylvania.

Argued March 1, 1995.

Filed April 12, 1995.

David S. Shrager, Duquesne, for appellant.

Before TAMILIA, JOHNSON and HUDOCK, JJ.

HUDOCK, Judge:

In this appeal we are asked to determine whether Pennsylvania has subject matter jurisdiction to modify a prior custody order of an Arizona court pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), which is codified at 23 Pa.C.S.A. sections 5341 *et seq.* The trial court found that the child's home state was Alberta, Canada, and that Pennsylvania had no basis to assume jurisdiction and modify Arizona's prior custody order. We conclude that the trial court correctly applied the UCCJA and therefore affirm.

The parties in this appeal are the natural parents of a minor child, Shannon, who was born December 7, 1989, in Durango, Colorado. Soon after the child was born the parties moved to Phoenix, Arizona, where James J. Black (Father) opened a chiropractic office. On August 1, 1990, Susan D. Black (Mother) took the child to visit her maternal grandparents in

Alberta, Canada. Although Mother had purchased return airline tickets for herself and the child, she advised Father on August 11, 1990, that she would not return to Arizona and intended to file for divorce. On October 19, 1990, the Family Division of the Provincial Court of Alberta entered a "Custody and Access Order" awarding sole custody of the child to Mother. Father then petitioned the Canadian court to compel Mother to return the child to Arizona. Father claimed that Mother wrongfully abducted the child from Arizona and that he was entitled to the child's return under the Hague Convention on the Civil Aspects of Child Abduction.[1] The Canadian court determined that Arizona was the appropriate forum to adjudicate the parties' custody dispute, and hence ordered Mother to return the child to Arizona.

The Superior Court of Arizona, Maricopa County, entered a custody order on February 12, 1992, granting Mother primary custody of the child and awarding Father visitation rights. Following the Arizona custody decree, Mother returned to Alberta, Canada, where she has continuously resided until the present day. Father moved to Allegheny County, Pennsylvania, and filed a complaint for custody on February 25, 1994, seeking full custody of his minor child. On March 3, 1994, Father presented a motion for emergency relief seeking temporary custody of his minor child. Father alleged that the child was physically present in Pennsylvania and had been abused by Mother while living in Canada. Father requested the court to award him temporary custody until the scheduled conciliation so that he could prevent Mother from taking the child back to Canada. The trial court denied Father's request for emergency relief without prejudice.

On March 21, 1994, the trial court conducted a conciliation to adjudicate Father's custody 'complaint. Mother did not appear at this conciliation and the trial judge requested Fa-

---

1. This Convention, which was adopted by the United States and Canada, provides for the recovery and return of children under the age of sixteen when they have been "wrongfully removed or retained" from their country of "habitual residence." JOANNE ROSS WILDER, PENNSYLVANIA FAMILY LAW PRACTICE AND PROCEDURE, 341, (3rd ed. 1993).

ther to file a brief on the issue of jurisdiction. After considering Father's brief regarding jurisdiction, the trial court entered an order on May 31, 1994, dismissing Father's custody complaint. Without hearing testimony on the issue of jurisdiction or the merits of Father's custody complaint, the trial court determined that it lacked subject matter jurisdiction to modify the Arizona custody decree. Father then filed this appeal asserting that it was error for the trial court to decline jurisdiction under the UCCJA. Additionally, Father argues that the trial court should have conducted an evidentiary hearing to determine if Pennsylvania had jurisdiction to entertain his custody complaint.

█ A decision of a trial court to decline jurisdiction under the UCCJA will not be disturbed on appeal absent an abuse of discretion. *Merman v. Merman*, 412 Pa.Super. 247, 250–52, 603 A.2d 201, 203 (1992).

To determine whether Pennsylvania has jurisdiction to entertain Father's custody complaint, we refer to the UCCJA. This Act was adopted by the Pennsylvania Legislature in 1977 "to provide measures for dealing with inter-state and international custody problems." *Warman v. Warman*, 294 Pa.Super. 285, 292–93, 439 A.2d 1203, 1207 (1982). More specifically:

> The purpose of the Act was to provide stability to the home environment and to family relationships by discouraging continuing controversy over child custody and visitation; to avoid jurisdiction disputes; to deter abductions; to avoid relitigation; to promote comity; and to assure that litigation concerning child custody takes place ordinarily in the state in which the child and his family have the closest connection.

*Barndt v. Barndt*, 397 Pa.Super. 321, 325–26, 580 A.2d 320, 322–23 (1990). *See also Goodman v. Goodman*, 383 Pa.Super. 374, 383–85, 556 A.2d 1379, 1384 (1989).

Section 5344(a) of the UCCJA delineates five circumstances when a Pennsylvania court may exercise jurisdiction to issue an initial or modified child custody decree. It provides:

**(a) General rule.**—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of

the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child. 23 Pa.C.S.A. § 5344(a).

In the present case, Father is seeking to modify a prior custody decree issued by the Arizona Superior Court. In this situation, we must adhere to section 5355 of the UCCJA which governs in situations where another state has rendered a prior custody order. Section 5355 provides that a court of Pennsylvania shall not modify a prior custody decree of another state unless:

(1) it appears to the court of this Commonwealth that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with [the UCCJA] or has declined to assume jurisdiction to modify the decree; and

(2) the court of this Commonwealth has jurisdiction.

23 Pa.C.S.A. § 5355(a).

We begin by examining whether any of the five jurisdictional bases of section 5344 apply to this case thus allowing the trial court to assume jurisdiction and modify the Arizona custody decree. Section 5344(a)(1), known as the "home state" jurisdiction, is the preferred basis of jurisdiction. *See Warman*, 294 Pa.Super. 299, 439 A.2d at 1210 ("primary jurisdiction remains in the community the child recognizes as 'home.' "); *Goodman*, 383 Pa.Super. 388, 556 A.2d at 1386 (jurisdiction premised on the ground that the forum is the child's home state predominates over the other grounds for jurisdiction). "Home state" is defined in section 5343, in pertinent part, as follows:

**"Home state."** The state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent, or in an institution, for at least six consecutive months, and, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned.

23 Pa.C.S.A. § 5343.

In the present case Father does not contest the trial court's determination that the child's home state is Alberta, Canada.

In fact, Father admits in his brief that Canada is the home state of the child. Consequently, Pennsylvania may not assume jurisdiction of Father's custody complaint pursuant to subsection (a)(1).

The second basis of jurisdiction in the UCCJA provides for jurisdiction based on the "significant contacts" among the various parties to the custody action and the locale in which the action has been brought. *Warman,* 294 Pa.Super. 293, 439 A.2d at 1207. This jurisdictional provision recognizes that, "a child may have a 'significant connection' to a state other than his 'home state' where, ..., the parents live in different states, there has been a shared custody arrangement, the child visits his grandparents, attends schools, and is treated by doctors in two different states." *Boudwin v. Boudwin,* 419 Pa.Super. 570, 575–77, 615 A.2d 786, 789 (1992).

> Under this section of the Act a court cannot assume jurisdiction unless the child and at least one contestant have a significant connection with the Commonwealth *and* there is available in Pennsylvania substantial evidence concerning present or future care of the child. Unless these requirements are satisfied there is no authority for a court to take jurisdiction under 42 Pa.C.S. § 5344[ (a)(2) ].

*Hovav v. Hovav,* 312 Pa.Super. 305, 311–12, 458 A.2d 972, 975 (1983) (emphasis in original).

To understand the rationale for this basis of jurisdiction, we refer to the comments of the drafters of the UCCJA:

> [Paragraph (2) of 5344(a)] was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its *purpose is to limit jurisdiction* rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be *maximum* rather than *minimum* contact with the state.

*Barndt,* 397 Pa.Super. 328, 580 A.2d at 323 (emphasis in original) (quoting the Commissioner's Notes explaining the UCCJA § 3).

■ Father argues that this subsection applies to his case to confer jurisdiction in the Pennsylvania court. Father alleges that even though Canada is the child's home state, Pennsylvania should exercise jurisdiction since he and his child have significant contacts with Pennsylvania. Father alleges the following connections with the Commonwealth: (1) he has been a permanent resident of Pennsylvania since at least February of 1992; (2) Father's extended family resides in Pennsylvania; (3) the child's paternal grandmother, who resides in Allegheny County, Pennsylvania, maintains a close relationship with the child; and (4) Father's extended family is concerned about the child's health and welfare.

The trial court concluded that these factors fall short of the required "significant connections" standard required by subsection (a)(2). The trial court noted that the child has never permanently resided in Pennsylvania, nor is there any information concerning the child's routine medical care, activities and current environment located in Pennsylvania.

Father relies on this Court's decision in *Hattoum v. Hattoum,* 295 Pa.Super. 169, 441 A.2d 403 (1982), to support his position that there are significant contacts among the child, himself and Pennsylvania. In that case, the children's home state was Argentina. Despite that fact, this Court concluded that Pennsylvania correctly assumed jurisdiction to modify a prior custody order since the children had significant contacts with Pennsylvania. The Court based its decision on the following facts: (1) the children resided in Pennsylvania with their mother for several years; (2) the father had permanently resided in Pennsylvania for nine years; (3) the children returned to visit their father in Pennsylvania every year for one-third of the year; and (4) there was ample evidence in Pennsylvania concerning the care, training and personal relationships of the children. *Id.* 441 A.2d at 406–7.

In the present case, Father has not alleged any of the same facts which this Court relied on in *Hattoum.* Mother and the

child have never resided in Pennsylvania and Father has only resided in Pennsylvania for approximately two years. Furthermore, Father does not allege where the court will find information regarding the child's care, training and personal relationships aside from the testimony of his immediate family. The child has never been enrolled in schools or day-care facilities located in Pennsylvania. Likewise, Father has not identified any individuals living in Pennsylvania, besides his immediate family, who are competent to render testimony regarding the child's physical and emotional needs. Moreover, a Pennsylvania court has never before rendered a custody decree dealing with this child. Father's allegations do not support an inference that the child has established strong ties within this Commonwealth such that it is in the child's best interest for our courts to assume jurisdiction. Consequently, we agree with the trial court that Father has not presented sufficient evidence of "significant contacts" with Pennsylvania to establish jurisdiction under subsection (a)(2).

The third source of jurisdiction under the UCCJA is referred to as *"parens patriae"* jurisdiction. This section provides for jurisdiction in the locale where the action has been commenced if certain conditions are met. In order to assume jurisdiction under this subsection, two conditions must be met: (1) the child must be physically present in the Commonwealth; and (2) the child has been abandoned, abused or is otherwise neglected or dependent. *Warman,* 294 Pa.Super. 293, 439 A.2d at 1207.

In the instant case, the trial judge determined that subsection (a)(3) did not apply since the child was not physically present in Pennsylvania on the date of the conciliation, March 21, 1994. Father argues that subsection (a)(3) applies to his case because at the time he commenced his custody complaint on February 25, 1994, the child was present in Pennsylvania. Father requests that we interpret subsection (a)(3) to require the child's physical presence in Pennsylvania at the time a custody action is commenced, not at the time the custody action is adjudicated.

This Court has previously ruled that the determination of jurisdiction must be made at the time of the commencement of the instant proceeding. *Simpkins v. Disney,* 416 Pa.Super. 243, 247–48, 610 A.2d 1062, 1064 (1992); *In Re Sagan,* 261 Pa.Super. 384, 387–89, n. 1, 396 A.2d 450, 452 n. 1 (1978). Based on this principle, we agree with Father that if the child was physically present in the Commonwealth when he filed his complaint for modification of custody, the trial court could have assumed jurisdiction *provided* the other prerequisites of subsection (a)(3) were met. In the instant case, the trial court held a hearing to determine if Father's emergency petition should be granted. This petition was denied on March 3, 1994. Thus, the trial court did not find sufficient evidence of an emergency situation where the child was in need of the court's protection to prevent abandonment, neglect or abuse. Without such proof the Pennsylvania court may not assume jurisdiction under subsection (a)(3). We therefore affirm the trial court's decision that subsection (a)(3) does not apply to the facts of this case, although our rationale is different. An appellate court may affirm the actions of a trial court for reasons other than those proffered by the trial court hearing such matter. *Soloski v. Hetrick,* 396 Pa.Super. 140, 154–55, n. 8, 578 A.2d 445, 453 n. 8 (1990).

The fourth basis of jurisdiction under the UCCJA is when "no other state would have jurisdiction" under the first three sources of jurisdiction previously discussed or when another state has declined to exercise jurisdiction since Pennsylvania is the more appropriate forum, and it is in the best interests of the child that Pennsylvania assumes jurisdiction. In the present case, the trial court found and Father agreed that Canada was the child's home state. Section 5365 of the UCCJA dictates that the general policies of the UCCJA apply to international custody cases. *Hattoum,* 295 Pa.Super. 174, 441 A.2d at 405. The trial court was correct when it concluded that a foreign country may be considered the "home state" for purposes of the UCCJA. *See Hattoum, supra,* 295 Pa.Super. 169, 441 A.2d 403 (court applied the UCCJA where the children's home state was Argentina). Therefore, if Canada

has a law substantially similar to section 5344(a)(1) of the UCCJA, it may exercise jurisdiction to modify the initial custody decree as the child's "home state."

■ Father argues that Canada could not assume jurisdiction of his custody complaint since it had previously determined that it lacked jurisdiction to entertain Mother's custody complaint. We disagree. The Provincial Court of Canada determined in 1989 that Arizona was the appropriate forum for adjudicating the parties' initial custody dispute. The Canadian court ordered Mother to return to Arizona with the child and to file her custody action in Arizona. Mother complied with the Canadian court's order and filed a complaint for custody in Arizona. Father never contested the jurisdiction of the Arizona court and the court awarded Mother sole custody of the child and permitted her to return to Canada to permanently reside. Since February of 1992 Mother has lawfully resided in Canada with her child.

The Canadian court can now assert jurisdiction to modify the Arizona custody decree since Mother lawfully took the child to Canada. Mother cannot be accused of abducting her child and forum shopping since she complied with the Canadian court order and the Superior Court of Arizona awarded her primary custody of her child. Accordingly, subsection (a)(4) does not apply to the facts of this case since it appears that Canada would have jurisdiction as the "home state" of the child.[2]

The fifth basis of jurisdiction does not apply to the facts of the present case and will not be examined.

■ Father argues that section 5348 of the UCCJA dictates that Pennsylvania assume jurisdiction of his custody complaint since Pennsylvania is the more appropriate forum to modify the initial custody decree. Father argues that Canada should not exercise jurisdiction since it would undermine one

---

**2.** Moreover, before a court in Pennsylvania may assume jurisdiction pursuant to subsection (a)(4), it must find that the best interests of the child will be served if the Pennsylvania court exercises jurisdiction. In this case, it is most likely not in the child's best interest that Pennsylvania exercise jurisdiction since there is little evidence in Pennsylvania concerning the child's needs and welfare.

of the policies of the UCCJA—to deter the unilateral abduction of children. As stated earlier, Mother has not abducted the child and unilaterally removed her to Canada. Mother was awarded sole legal custody of the child by the Arizona court. Mother was not restricted from leaving the United States and residing in Canada with the child. Furthermore, Father's reliance on section 5348 is misplaced. This section only applies when there are concurrent forums which may properly exercise jurisdiction under the jurisdictional provisions of section 5344. Section 5348 provides in pertinent part:

(a) **General Rule.**—A court which has jurisdiction under [the UCCJA] to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

\*    \*    \*    \*    \*    \*

(c) **Factors to be considered.**—In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose, it may take into account the following factors, among others:

(1) If another state is or recently was the home state of the child.

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

(3) If substantial evidence concerning the present or future care, protection, training and personal relationships of the child is more readily available in another state.

(4) If the parties have agreed on another forum which is no less appropriate.

(5) If the exercise of jurisdiction by a court of this Commonwealth would contravene any of the purposes stated in section 5342 (relating to purposes and construction of [the UCCJA]).

23 Pa.C.S.A. § 5348. The trial court cannot exercise jurisdiction under this section until it first concludes that one of the jurisdictional bases found in section 5344 applies. Since the trial court was correct in concluding that Pennsylvania did not have jurisdiction under any jurisdictional provision of the UCCJA, section 5348 does not apply.

Finally, Father contends that the trial court should have conducted an evidentiary hearing to determine whether it had jurisdiction to entertain his custody complaint. This Court has examined this precise issue in *Hovav v. Hovav, supra*, 312 Pa.Super. 305, 458 A.2d 972. In that case the appellant-mother argued that the trial court erred when it refused to hear testimony on the merits of her custody petition. This Court rejected the appellant's argument and stated:

It is of course true that there can be no effective review of the *merits* of a lower court's custody determination without a complete record and a comprehensive opinion from the lower court. *In re Custody of J.S.S.*, 298 Pa.Super. 428, 444 A.2d 1251 (1982). Yet in this case, the lower court's decision went not to the merits of [appellant's] petition, but rather to its jurisdiction to hear the petition at all. The UCCJA provides that where the existence or exercise of jurisdiction is questioned, the case shall be handled expeditiously. 42 Pa.C.S. § 5366. Accordingly, the lower court correctly decided the jurisdiction issue before examining the merits of the case. There was enough information before the lower court to enable it to decide the question and it is not necessary to remand for further proceedings on this issue.

*Hovav*, 312 Pa.Super. 309, 458 A.2d at 974 (emphasis in original).

The same analysis applies to the present case. Prior to adjudicating the merits of Father's custody complaint, the trial court applied the law of section 5344 to determine if it had subject matter jurisdiction to entertain Father's complaint. Father failed to allege sufficient facts in his custody complaint, emergency petition, and trial court brief in support of Pennsylvania jurisdiction to warrant a further evidentiary hearing. Father had not raised a colorable argument in support of his

contention that Pennsylvania had jurisdiction to adjudicate the merits of his custody complaint. We agree with the trial court that it was unnecessary for the court to conduct an evidentiary hearing to make this determination.

Order affirmed.