701 A.2d 210

**Meltem Umar DINCER, Appellee,**

v.

**Fehmi DINCER, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 27, 1997.

Decided Sept. 19, 1997.

310

Judith Widman, Ellen Goldberg Weiner, Philadelphia, for Fehmi Dincer.

Douglas B. Breidenbach, Jr., Pottstown, for Meltem Umar Dincer.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

NEWMAN, Justice.

We granted allocatur in this case to determine if the Court of Common Pleas of Montgomery County (trial court) properly held that the Commonwealth is not the appropriate forum for a custody action involving children born and raised in a foreign country.

## FACTS

Meltem Dincer (Mother) is an American citizen of Turkish descent who was born and raised in Montgomery County. Fehmi Dincer (Father), is a Turkish citizen who met Mother while he was a student at Drexel University in Philadelphia. The parties married in Ankara, Turkey in 1982, and settled immediately in Belgium, where Father had already worked for two years as a civil engineer for the Supreme Headquarters of the Allied Powers of Europe (SHAPE), the military arm of NATO. They have three children, all of whom were born in Belgium: a daughter, Cigdem, born in 1985; a son, Alper, born in 1986; and another daughter, Aylin, born in 1991. At the time the instant action began, the two older children were attending the British school on the SHAPE base, and the youngest daughter was enrolled in a Belgian kindergarten.

Every year the children would visit their maternal grandparents in Montgomery County for a month, and their pater-

nal grandparents in Turkey for a month.[1] On December 8, 1994, Mother and the children traveled to Pennsylvania, with round-trip tickets to return to Belgium on December 29, 1994. However, on December 23, 1994, Mother filed a Complaint for Custody and Petition for Special Relief in the trial court.[2] The court entered an Order the same day granting physical custody to Mother "on a temporary basis, without prejudice," because Father did not have notice or the opportunity to participate in any proceedings. The Complaint, Petition and Order were served on Father on January 16, 1995. The trial court scheduled a hearing for March 6, 1995 on the issue of jurisdiction of the custody matter, and Father received notice on February 16, 1995.

Father filed for divorce and custody in the Tribunal de Premiere Instance, Mons, Belgium on February 1, 1995. Mother received notice of a custody hearing scheduled in Belgium for February 22 and 23, 1995, but she did not appear. Following the proceedings, the court issued an Order dated March 1, 1995, granting "provisional" custody to Father, and he registered this Order with the Prothonotary of Montgomery County.

The trial court held a hearing on March 6, 1995, and heard testimony from both Father and Mother about the family's life in Belgium.[3] Father and Mother are Muslim, but in recent years Father has become more observant, and prays five times a day. He reads to the children daily from the Koran, although he does not go to the mosque on a regular basis. Both parties testified that Father insists that the family speak only Turkish at home, and Father testified that although he prefers that the children watch Turkish television, he does not prevent them from watching videotapes of American cartoons and movies. The parties agreed that Husband bought a newly

1. In its Opinion, the Superior Court states that Mother would accompany the children to Pennsylvania, but that the entire family would visit Turkey. However, at the hearing on March 6, 1995, Mother testified that Father usually went with her and the children to visit her parents. R. 204a–205a.

2. Mother also filed for divorce and custody in the Turkish courts.

3. The notes of testimony from the hearing are 165 pages.

constructed home in Turkey in 1993, but differed as to the reason for the purchase. Husband testified that because of possible reductions at SHAPE due to the end of the Cold War, he wanted to have a home for his family as a contingency plan. He stated that upcoming cuts would not affect his job, and that he intends to stay in Belgium as long as possible. Mother testified that Father intends to move to Turkey with the children.

Following the hearing, the trial court determined that Belgium, and not the Commonwealth of Pennsylvania had jurisdiction of the matter pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), 23 Pa.C.S.A. §§ 5341—5366. Accordingly, it vacated the ex parte Temporary Custody Order, noting that the Belgian court's Order granting "provisional" custody to father must be given comity. The court, sua sponte, issued a supersedeas to its Order, allowing the status quo to remain during the pendency of an appeal. Mother appealed the trial court's determination regarding jurisdiction to the Superior Court, and Father appealed the grant of the supersedeas. On September 5, 1995, the Superior Court affirmed the grant of the supersedeas, but vacated the Order as to jurisdiction, and remanded for additional findings of fact.

During the pendency of the appeal, the Belgian Court held a hearing on the custody action, which both parties and their counsel attended. The court considered the testimony of the parties, the transcript of the Montgomery County proceedings of March 6, 1995, the Opinions of the trial court and the Superior Court and the report of Mother's custody evaluator, Dr. Anthony Pisa. The court issued an Order on October 17, 1995, saying that it had jurisdiction of the matter, and awarding custody to Father. Mother did not appeal the Order of the Belgian Court, but remained in Pennsylvania with the children.

## DISCUSSION

### UCCJA

The trial court's jurisdiction is controlled by Section 5344(a) of the UCCJA, which provides in relevant part:

*Section 5344.* Jurisdiction

(a) *General rule.*—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this Commonwealth because of this removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph 1, 2, or 3, or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

23 Pa.C.S.A. § 5344(a).

Section 5343 of the UCCJA defines "home state," in relevant part, as:

The state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent, or in an institution, for a least six consecutive months. . . .

23 Pa.C.S.A. § 5343.

The UCCJA applies to international custody disputes pursuant to Section 5365, which provides as follows:

The general policies of this subchapter extend to the international area. The provisions of this subchapter relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by the appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.

23 Pa.C.S.A. § 5365.

### Home State

In the instant matter, the trial court determined that Section 5344(a)(1)(i) did not confer jurisdiction upon it because Pennsylvania is not the children's home state. In support of this conclusion, the trial court noted that the children were born and raised in Belgium. The Court further concluded that pursuant to Subsection (a)(1)(ii), the Commonwealth could not be the children's home state since they were here for only two weeks prior to the commencement of the proceeding, rather than the required six months. The trial court also held

that jurisdiction did not arise under Subsection (a)(2) because the children's visits each year to their grandparent's home in Norristown was not a significant connection to the Commonwealth. Subsection (a)(3) did not provide jurisdiction either, pursuant to the trial court's analysis, in light of the fact that Mother made no allegations of abandonment or mistreatment. Based on the home state analysis, the trial court held that it did not have jurisdiction of this case.

■ The home state is the preferred basis for jurisdiction pursuant to the UCCJA. *Black v. Black*, 441 Pa.Super. 358, 657 A.2d 964 (1995), *allocatur denied*, 542 Pa. 655, 668 A.2d 1119 (1995); *Goodman v. Goodman*, 383 Pa.Super. 374, 556 A.2d 1379 (1989), *allocatur denied*, 523 Pa. 642, 565 A.2d 1167 (1989); *Warman v. Warman*, 294 Pa.Super. 285, 439 A.2d 1203 (1982). Here, the Superior Court agreed with the trial court that Belgium was the children's home state. Relying on *Hattoum v. Hattoum*, 295 Pa.Super. 169, 441 A.2d 403 (1982), and *Tettis v. Boyum*, 317 Pa.Super. 8, 463 A.2d 1056 (1983), the Superior Court noted that a child's home state is not necessarily the appropriate forum for a custody determination, and accordingly, the trial court should have considered other bases for jurisdiction. While *Hattoum* and *Tettis* stand for this proposition, we note that there are factual differences between those cases and the instant matter, which render them of limited applicability to this matter.

In *Hattoum*, the parents were divorced in Virginia in 1973, and the Virginia court awarded custody of the children to the mother. A year later, both parties moved to Westmoreland County, Pennsylvania, where the court of common pleas entered a consent decree transferring custody to the father. Shortly after that, the mother moved to Argentina with the children, who would spend approximately four months of vacation each year with their father in the United States. This pattern continued from 1974 through 1979, when the father informed the mother that he intended to keep the children permanently. Following a hearing, the trial court determined that it had jurisdiction, and issued an order awarding custody of the children to their father. On appeal,

the Superior Court affirmed, and noted that the mother, by agreeing to modification of the Virginia decree in a Pennsylvania court, had placed custody under the jurisdiction of this Commonwealth. In the instant matter, however, there was no preexisting order granting custody to one parent, and the childrens' annual three-week visit to their grandparents' home is qualitatively and quantitatively different from the Hattoum children's four month stays with their father in Pennsylvania.

The Superior Court also relied on its decision in *Tettis* a case in which the parties were living in San Angelo, Texas when mother moved out of the family home in September of 1979. She continued to live in the same city, and visited the children every day. The court entered a divorce decree in May of 1980, with custody given to the father, who was a member of the armed forces. In March of 1981, the mother moved to her hometown in Elk County, Pennsylvania. The father brought the children to their mother for an extended visit in 1981 and in 1982. While the children were visiting in 1982, the mother filed a custody petition in the court of common pleas. The trial court recognized that Texas was the children's home state, but noted that the military had transferred the father to California for a temporary duty assignment before he brought the children to their mother. Moreover, at the time of the hearing, the father was uncertain where the military would post him at the end of his stay in California. Because of the "diminishing connections" between the father, the children and Texas, the trial court determined that it would be in the best interests of the children for Pennsylvania to retain jurisdiction.

In this case, the trial court heard extensive testimony from both parties regarding Mother's allegations that Father intended to move from Belgium to Turkey. While the Superior Court states that "Father did not deny his intention to move to Turkey...." *Dincer*, 446 Pa.Super. at 9, 666 A.2d at 284, we note that the following exchange took place between Father and his counsel at the March 6, 1995 hearing:

Q: So it is your intention to stay in Belgium?

A: Yes.

Q:  For as long as possible?

A:  Yes.

R. 121a. Although the trial court did not make a specific finding regarding how long Father intended to remain in Belgium, the fact that it concluded that Belgium, and not Pennsylvania, was the home state indicates that the court did not consider the children's contacts with Belgium to be "diminishing," as in *Tettis.*

### Significant Connections

█  We agree with the Superior Court that once the trial court completes its home state analysis, it then must analyze whether the children have a significant connection with the Commonwealth of Pennsylvania pursuant to Section 5344(a)(2). If so, the trial court must determine whether it is in the best interest of the children for the court to exercise jurisdiction. In the instant matter, the Court fulfilled this obligation by addressing Section 5344(a)(2) in its Opinion, and noting, "The children simply have no significant connection to this Commonwealth. Their sole connection with Pennsylvania is that they have occasionally traveled to Norristown to visit their maternal grandparents." Trial Court Opinion, May 1, 1995 at 4. Although not a detailed analysis, our review of the record shows that the trial court correctly identified the children's strongest connection to Pennsylvania.

█  The Superior Court remanded this matter to the trial court with direction that it compares the extent to which "the children's contacts with Belgium outweigh their significant connections with Pennsylvania." *Dincer,* 446 Pa.Super. at 11, 666 A.2d at 286. The Superior Court noted that "significant connection" is not defined in the UCCJA, but determined that the term must be "applied flexibly, taking into account the unique circumstances of the particular child or children," *Id.* at 11, 666 A.2d at 285, because the analysis is based on the children's best interest. However, the comment to the relevant paragraph of the model UCCJA states:

Paragraph (2) [23 Pa.C.S.A. § 5344(a)(2) ] perhaps more than any other paragraph of the Act requires that it be interpreted in the spirit of the legislative purpose expressed in section 1 [23 Pa.C.S.A. § 5342]. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. *But its purpose is to limit jurisdiction rather than to proliferate it. ... There must be maximum rather than minimum contact with the state.*

*9 Uniform Laws Annotated,* p. 145, West Publishing Co., 1979 (emphasis added); *Black v. Black,* 441 Pa.Super. 358, 366, 657 A.2d 964, *allocatur denied,* 542 Pa. 655, 668 A.2d 1119 (1995); *Barndt v. Barndt,* 397 Pa.Super. 321, 328, 580 A.2d 320, 323 (1990). The courts of this Commonwealth have referred to this as "the maximum significant contacts test." *Barndt,* 397 Pa.Super. at 329, 580 A.2d at 324; *Aldridge v. Aldridge,* 326 Pa.Super. 49, 473 A.2d 602 (1984); *Commonwealth ex. rel. D. v. S.,* 297 Pa.Super. 78, 443 A.2d 307 (1982). By applying its flexible standard, the Superior Court considered the following contact with Pennsylvania to be "regular and ongoing," *Dincer,* 446 Pa.Super. at 11, 666 A.2d at 286:(1) the children's annual visits to Pennsylvania; (2) the maternal grandparents' visits to Belgium; (3) Mother's birth in Pennsylvania, and her residence here until marriage; and (4) the children's physical presence in the Commonwealth since December 1994. The first three factors cannot be considered maximum contacts. Furthermore, the fact that "there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child(ren)," Section 5344(a)(2)(ii), because of their presence here since December 1994, is of no moment because jurisdiction is determined at the time the action is commenced. *Black,* 441 Pa.Super. at 368, 657 A.2d at 969. When Mother filed her action, the children had only been Pennsylvania for two weeks, and accordingly, no school records or other evidence regarding their care or training was available here. To allow Mother to gain an advantage by bringing the children to Pennsylvania, and then settling with them here, in opposition

320

to Father's wishes, would be contrary to Section 5344(5) of the UCCJA, 23 Pa.C.S.A. § 5344(5), which provides that one of the purposes of the Act is to deter the unilateral removal of children from other jurisdictions to obtain custody awards.

To determine jurisdiction, the Superior Court directed the trial court "to evaluate the degree to which the children's contacts with Belgium outweigh their significant connections with Pennsylvania." *Dincer*, 446 Pa.Super. at 11, 666 A.2d at 286. We find no basis in the UCCJA or in our case law to support the conclusion that a balancing of interests analysis is appropriate for determining whether the Commonwealth has jurisdiction of a custody matter. Pennsylvania either meets the criteria for jurisdiction pursuant to Section 5344(a)–(c), or it does not, without considering any other forum. The sole exception is that where no other state has jurisdiction, or another state has declined jurisdiction in favor of the Commonwealth, the Commonwealth may determine custody if to do so is in the best interest of the child. Section 5344(d). This is not true here, because the children have extensive contacts with Belgium, a country that has exercised jurisdiction over their custody. It is only *after* the Commonwealth determines that it has jurisdiction that it may measure its claim against another forum also having jurisdiction.[4] Jurisdiction is determined according to Section 5344(a)–(c), and not by comparison to another state or country. Therefore, the Superior Court erred in ordering the trial court to weigh the strength of the connections against those of Belgium.[5]

### Additional Considerations

Even in cases where jurisdiction lies in Pennsylvania and another forum, our courts have recognized the UCCJA's "policy of circumscribing jurisdiction in custody cases rather

4. Comparison of one state with jurisdiction against another is provided for in Section 5347 (simultaneous proceedings in other states); Section 5348 (inconvenient forum); and Section 5349 (jurisdiction declined by reason of conduct).

5. Because of our disposition of this issue, we need not address Appellant's position that even if Pennsylvania had jurisdiction of this matter, it should have declined to exercise it.

than proliferating it." *Goodman v. Goodman*, 383 Pa.Super. 374, 386, 556 A.2d 1379, 1385 (1989); *Hattoum*, 295 Pa.Super. at 175, 441 A.2d at 406; *Warman v. Warman*, 294 Pa.Super. at 301, 439 A.2d 1203, 1211. Accordingly, this Commonwealth properly refuses to exercise jurisdiction where another state demonstrates that it is willing to hear a custody matter. *Carpenter v. Carpenter*, 326 Pa.Super. 570, 474 A.2d 1124 (1984).

In the instant case, Pennsylvania does not have jurisdiction under the home state or significant connection test. The Belgian court, after determining that it had jurisdiction over the subject matter and the parties, and after extending the parties an opportunity to be heard, issued an Order awarding custody to Father. The Court specifically noted that it issued its decision "in the interest of the children." R. at 383. Because the Belgian court properly exercised jurisdiction and afforded due process to the parties, this Commonwealth must recognize the validity of the Belgian decree. *See, Commonwealth ex rel. Zaubi v. Zaubi*, 492 Pa. 183, 423 A.2d 333 (1980).

For these reasons, we reverse the Order of the Superior Court and reinstate the judgment of the trial court.