**William McCOY, Jr., Appellant,**

v.

**Yvonne D. THRESH, Appellee.**

Superior Court of Pennsylvania.

Submitted Oct. 12, 2004.
Filed Nov. 12, 2004.

Douglas G. Miller, Carlisle, for appellant.

Yvonne Thresh, appellee, Pro Se.

BEFORE: HUDOCK, GANTMAN, and BECK, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, William McCoy, Jr. ("Father"), asks us to determine whether the Cumberland County Court of Common Pleas erred when it declined to exercise jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act ("UCCJA")[1] and dismissed Father's custody complaint. We hold the court properly declined jurisdic-

---

[1]. 23 Pa.C.S.A. §§ 5341–5366.

tion over the custody proceedings. Accordingly, we affirm.

¶ 2 The trial court has fully and correctly set forth the relevant facts and procedural history of this case as follows:

The parties are the parents of [C.W.M.], born May 14, 1996. From the time of birth until they separated in April of 2002, the parties lived with the child in California. The parties shared custody of the child in California from the date of separation until [Father] moved to Pennsylvania in March of 2003. By agreement of the parties, the child came to live with [Father] for the summer beginning on June 1, 2003. Rather than return the child at the end of the summer, [Father] enrolled him in school. [Father] testified that [Mother] came to Pennsylvania, removed the child from school, and returned with him to California on November 13 or 14, 2003. On November 19, 2003 [Mother] obtained an emergency order from the Superior Court of El Dorado County, California which granted her temporary custody. [Father] did not file the instant action until January 20, 2004 at which time he alleged:

Upon information and belief, [Mother] may have commenced a custody action in California, but to date [Father] has not been served with any complaint or other notice of any such proceeding.

[*See* Complaint, filed 1/20/04, at ¶ 19]. In point of fact, not only did [Father] have actual knowledge of the California action, he had retained California counsel to enter a special appearance to challenge the jurisdiction of the California courts.

A conciliation conference in the case at bar was scheduled for February 16, 2004. Mother contacted the conciliator from her home in California to advise that she could not attend. She further advised that she was attempting to retain counsel in Pennsylvania. The conference was held and the conciliator noted:

There may be an issue with respect to where this case should be litigated. . . . However, Mother has not taken any affirmative action to raise issues of jurisdiction or venue at this particular time. Accordingly, the conciliator feels this case should proceed through the system in Cumberland County with the scheduling of a hearing.

[*See* Conciliator's Report, filed 2/19/04, at 1].

After receiving the conciliator's report, [the trial court] scheduled a hearing for March 25, 2004. Only [Father] and his counsel appeared. At the hearing, [the trial court] had two major concerns with regard to jurisdiction: 1) whether valid service had been effectuated upon [Mother]; and 2) whether [the trial court's] exercise of jurisdiction was appropriate under the terms of the [UCCJA]. At the conclusion of testimony [the trial court] declined to exercise jurisdiction.

(Trial Court Opinion, dated July 9, 2004, at 1–3). This timely appeal followed.

¶ 3 Father raises the following two issues for our review:

WHERE NO CUSTODY ORDER IS IN EXISTENCE IN ANY JURISDICTION AND [FATHER] AND THE MINOR CHILD WERE RESIDING IN PENNSYLVANIA, DID THE [TRIAL] COURT COMMIT AN ERROR OF LAW OR ABUSE OF DISCRETION IN DENYING JURISDICTION?

    A. SPECIFICALLY, WHERE THE MINOR CHILD WAS UNILATERALLY REMOVED FROM PENNSYLVANIA BY

[MOTHER] JUST PRIOR TO THE PASSING OF SIX MONTHS RESIDENCY, IS PENNSYLVANIA THE "HOME STATE" OF THE CHILD?

B. IN THE ALTERNATIVE, ARE THERE "SIGNIFICANT CONTACTS" FOR JURISDICTION IN PENNSYLVANIA WHERE THE CHILD WAS ENROLLED IN SCHOOL, ATTENDING CHURCH, AND RECEIVING MEDICAL CARE IN PENNSYLVANIA AND LIVING WITH [FATHER], WHO HAD RETURNED TO THE STATE TO LIVE AND WORK?

DID THE [TRIAL] COURT COMMIT AN ERROR OF LAW OR ABUSE OF DISCRETION IN DENYING [FATHER'S] COMPLAINT WHEN [MOTHER] FAILED TO APPEAR FOR THE HEARING AND REFUSES TO PROVIDE ACCESS FOR REGULAR CONTACT WITH THE MINOR CHILD?

(Father's Brief at 2).

¶ 4 A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. *See generally Zimbicki v. Zimbicki,* 810 A.2d 168, 170 (Pa.Super.2002); *Van Dyke v. Van Dyke,* 722 A.2d 725 (Pa.Super.1998); *Merman v. Merman,* 412 Pa.Super. 247, 603 A.2d 201 (1992). Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. *Favacchia v. Favacchia,* 769 A.2d 531, 537 (Pa.Super.2001). An abuse of discretion requires *clear and convincing* evidence that the trial court misapplied the law or

failed to follow proper legal procedures. *Cohenour v. Cohenour,* 696 A.2d 201 (Pa.Super.1997); *Paulone v. Paulone,* 437 Pa.Super. 130, 649 A.2d 691 (1994).

¶ 5 In his first issue, Father claims he offered substantial uncontested evidence that Pennsylvania was the child's "home state" under the UCCJA. Specifically, Father contends C.W.M. would have lived in Pennsylvania for the statutorily prescribed six-month period, but for Mother's "unilateral actions" of removing him from the jurisdiction and returning him to California. Father believes Mother's unilateral actions were intended to defeat Father's efforts and establish a forum beneficial to her, something that should not be condoned by this Court.

¶ 6 In the alternative, Father argues "significant contacts" with Pennsylvania justify the court's exercise of jurisdiction in the best interests of C.W.M. According to Father, C.W.M. attended school and church in Pennsylvania, has family members here, and desires to live in Pennsylvania. Although of shorter duration, Father contends the numerous contacts and relationships established in Pennsylvania are more beneficial to the child than those established in California. Father concludes the trial court erred in declining to exercise jurisdiction under either the "home state" or the "significant contacts" prong of the UCCJA and insists this case must be remanded for further proceedings. We cannot agree.

¶ 7 The issue of jurisdiction in this matter is governed by the UCCJA, which provides:

§ 5344. **Jurisdiction**

(a) **General rule.**—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determi-

nation by initial or modification decree if:

    (1) this Commonwealth:

        (i) is the home state of the child at the time of commencement of the proceeding; or

        (ii) had been the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

    (2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

        (i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

        (ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child;

    (3) the child is physically present in this Commonwealth, and:

        (i) the child has been abandoned; or

        (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

    (4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

        (ii) it is in the best interest of the child that the court assume jurisdiction; or

    (5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

**(b) Physical presence insufficient.**— Except under subsection (a)(3) and (4), physical presence in this Commonwealth of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this Commonwealth to make a child custody determination.

**(c) Physical presence unnecessary.**— Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

23 Pa.C.S.A. § 5344(a)-(c). Section 5343 defines "home state" in relevant part as:

**"Home state."** The state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent, or in an institution, for at least six consecutive months....

23 Pa.C.S.A. § 5343. The home state is the preferred basis for jurisdiction pursuant to the UCCJA. *Dincer v. Dincer*, 549 Pa. 309, 701 A.2d 210 (1997).

    ¶ 8 Pennsylvania courts will not assume jurisdiction under the "significant contacts" principle unless it appears that no other state can assume jurisdiction under statutory prerequisites substantially similar to Pennsylvania law. *Tettis v. Boyum*, 317 Pa.Super. 8, 463 A.2d 1056, 1060-61 (1983). A petitioner seeking jurisdiction under the less favored "significant contacts" principle has the burden of proving the asserted bases for jurisdiction, which can be a heavy burden "especially if

he approaches the matter with unclean hands." *Warman v. Warman*, 294 Pa.Super. 285, 439 A.2d 1203, 1212 (1982) (citing 23 Pa.C.S.A. § 5349). In that respect, Section 5349 of the UCCJA authorizes the court to decline jurisdiction under the following circumstances:

§ 5349 **Jurisdiction declined by reason of conduct**

(a) **General Rule.**—If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in conduct intending to benefit his position in a custody hearing, the court may decline to exercise jurisdiction if this is just and proper under the circumstances.

23 Pa.C.S.A. § 5349(a).

¶ 9 "Even in cases where jurisdiction lies in Pennsylvania and another forum, our courts have recognized the UCCJA's 'policy of circumscribing jurisdiction in custody cases rather than proliferating it.'" *Dincer, supra* at 320–21, 701 A.2d at 216 (quoting *Goodman v. Goodman*, 383 Pa.Super. 374, 556 A.2d 1379, 1385 (1989), *appeal denied*, 523 Pa. 642, 565 A.2d 1167 (1989)). Only after the Commonwealth determines it has jurisdiction can it then "measure its claim against another forum also having jurisdiction." *Dincer, supra* at 320, 701 A.2d at 216.

¶ 10 Following a thorough review of the record, Father's brief, the applicable law, and the well-reasoned opinion of the Honorable Edward E. Guido, we conclude Father's first issue merits no relief on appeal. Judge Guido's opinion succinctly discusses and properly disposes of this issue as follows:

We were satisfied that neither Pennsylvania nor California qualified as the child's "home state." Pennsylvania did not qualify because the child had lived in this Commonwealth a total of only five and one-half months. Aside from those

five and one-half months, he had spent his entire life in California. However, neither did California qualify as the child's "home state" under Section 5344(a)(1). Since he had not lived in California for six consecutive months "immediately preceding" the commencement of this action, it did not meet the definition of home state under Section 5343. Therefore, Subsection (i) of 5344(a)(1) did not apply. Likewise, because the child was not "absent" from California when the action was filed, Subsection (ii) was not applicable. Therefore, if we had jurisdiction, it was pursuant to the "significant contacts" provisions of the [UCCJA].

The significant contacts provisions are contained in Section 5344(a)(2)....

* * *

We were not persuaded that the child had sufficient contacts with this Commonwealth to confer jurisdiction. He had lived here only a few months and had attended school for less than two months. Further, he was enrolled in school over the objection of...Mother and in contravention of the agreement between the parties that he would be returned home to [Mother] at the end of the summer. On the other hand, the child had spent the entire eight years of his life in California prior to coming to Pennsylvania for the first time in June. The majority of the witnesses with information relevant to his best interests (doctors, teachers, child care providers, and those familiar with the parenting abilities of the parties) are located in California. As the Superior Court has noted, "the test is one of maximum rather than minimum significant contacts." [*Zimbicki, supra* at 171]. California is clearly the jurisdiction with the maximum significant contacts.

Even if we erred in our determination that we did not have jurisdiction under the significant contacts section of the [UCCJA], we were satisfied that our decision not to address the merits was appropriate. The [UCCJA] authorizes us to decline jurisdiction if we find that [Father] "wrongfully...engaged in conduct intending to benefit his position in a custody hearing." 23 Pa.C.S.A. § 5349. We found such conduct existed in this case. It included [Father's] refusal to return the child at the conclusion of the agreed upon visitation period. It also included his waiting to file the instant action for two months after the child had returned to California, but within a week after the California custody action had been dismissed for lack of service. We were convinced that his actions were aimed at allowing him to litigate this matter in Pennsylvania to the great disadvantage of [Mother].

(Trial Court Opinion at 5–7). We agree with the trial court that Pennsylvania does not have jurisdiction under either the "home state" or the "significant contacts" provision of the UCCJA. *See Dincer, supra.* In light of the court's reasoning and its credibility findings, we see no reason to disturb its decision. *See Zimbicki, supra; Favacchia, supra.*

■ ¶ 11 Next, Father alleges the court's concern about the proceedings being held *"ex parte"* is without basis, where Mother was aware of the court-ordered conciliation conference on February 16, 2004, and elected not to appear either personally or through legal counsel. Although Mother did not personally sign the certified mail return receipt for the custody complaint, Father urges this procedural defect is not enough to invalidate service. Father insists Mother simply chose not to appear. Father concludes the trial court abused its discretion in questioning service

and should have exercised jurisdiction in this matter. We disagree.

■ ¶ 12 "Proper service is a prerequisite to a court acquiring personal jurisdiction over a defendant." *Education Resources Institute, Inc. v. Cole,* 827 A.2d 493, 502 (Pa.Super.2003), *appeal denied,* 577 Pa. 721, 847 A.2d 1286 (2004). With respect to notice of proceedings to persons outside the Commonwealth, the UCCJA in relevant part provides:

§ 5346. **Notice to persons outside this Commonwealth; submission to jurisdiction**

(a) **General rule.**—Notice required for the exercise of jurisdiction over a person outside this Commonwealth shall be given in a manner reasonably calculated to give actual notice, and may be:

(1) by personal delivery outside this Commonwealth in the manner prescribed for service of process within this Commonwealth;

(2) in the manner prescribed by the law of the place in which the service is made for service of process in that place in an action in any of its courts of general jurisdiction;

(3) by any form of mail addressed to the person to be served and requesting a receipt; or

(4) as directed by the court, including publication, if other means of notification are ineffective.

\* \* \*

(c) **Proof of service.**—Proof of service outside this Commonwealth may be made by affidavit of the individual who made the service, or in the manner prescribed by the law of this Commonwealth, the order pursuant to which the service is made, or the law of the place in which the service is made. If service is made by mail, proof may be a receipt

signed by the addressee or other evidence of delivery to the addressee.

\* \* \*

23 Pa.C.S.A. § 5346(a), (c). The statute is consistent with the Pennsylvania Rules of Civil Procedure which also provide:

**Rule 403. Service by Mail**

If a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent. Service is complete upon delivery of the mail.

Pa.R.C.P. 403. Rule 404 governs service outside the Commonwealth:

**Rule 404. Service Outside the Commonwealth**

Original process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint or the reissuance or the reinstatement thereof:

\* \* \*

(2) by mail in the manner provided by Rule 403;

(3) in the manner provided by the law of the jurisdiction in which the service is made for service in an action in any of its courts of general jurisdiction

\* \* \*

Pa.R.C.P. 404. Further, Rule 405 states:

**Rule 405. Return of Service**

\* \* \*

(c) **Proof of service by mail under Rule 403 shall include a return receipt signed by the defendant** or, if the defendant has refused to accept mail service and the plaintiff thereafter has served the defendant by ordinary mail,

(1) the returned letter with the notation that the defendant refused to accept delivery, and

(2) an affidavit that the letter was mailed by ordinary mail and was not returned within fifteen days after mailing.

Pa.R.C.P. 405(c)(1)-(2) (emphasis added). Rule 403 notes the United States Postal Service provides for restricted delivery by mail, which can only be delivered to the addressee or authorized agent. Pa.R.C.P. 403 *Note*.

¶ 13 Instantly, Father attempted service of the custody complaint on Mother in California *via* certified mail. The original return receipt found in the certified record indicates the complaint was addressed to Mother, and the United State Postal Service delivered the complaint to Mother's correct address on January 27, 2004. However, Mother's signature is not on this receipt, in contravention of the service rules. The trial court recognized these deficiencies:

[Father] did not comply with the Pennsylvania Rules of Civil Procedure in effectuating service of the complaint.

\* \* \*

Rule 405 makes it clear that if original process is served by mail it must be actually delivered to the party upon whom service is being made.

\* \* \*

The return receipt on the "Affidavit of Service of Complaint" was not signed by the defendant as required by Rule 405(c).

(Trial Court Opinion at 3–4). Although the trial court was "uncomfortable with the service," it was satisfied that Mother had actual notice of the proceedings, *see* 23 Pa.C.S.A. 5346(a), and the court had per-

sonal jurisdiction over her. (*See* Trial Court Opinion at 4 n. 11.) Thus, the court demonstrated it did not rest its decision on service or personal jurisdiction grounds.

¶ 14 Based upon the foregoing, we hold the record as a whole supports the court's resolution to decline jurisdiction under the UCCJA over the custody proceedings. Accordingly, we affirm.

¶ 15 Order affirmed.